IN THE MATTER OF PROCEEDINGS BEFORE A SPECIAL
GRAND JURY.

No. 89-P-642.

Norfolk. June 12, 1989. — August 17, 1989.

Present: DREBEN, KASS, & SMITH, JJ.

*Practice, Criminal*, Grand jury proceeding. *Contempt. Constitutional Law*,
Self-incrimination.

In the circumstances of a proceeding before a grand jury it was not "perfectly
clear" that a witness's testimony "[could not] possibly" have a tendency
to incriminate him, with the result that the witness was justified in not
answering certain questions before the grand jury. [698-700]

ADJUDICATION of contempt in the Superior Court Depart-
ment by *Roger J. Donahue*, J., on April 27, 1989.

*John Wall* (*David Shaughnessy* with him) for the witness.

*John P. Kivlan*, Special Assistant Attorney General, for the
Commonwealth.

SMITH, J. This appeal is from a Superior Court judgment
holding a grand jury witness (witness) in contempt for refusing
to answer questions put to him before a special grand jury in
Norfolk County. The judgment stated that the witness was to
be committed to the house of correction "until he decides to
comply with the [c]ourt [o]rder, up to the time that the term
of the [s]pecial [g]rand jury expires." A single justice of this
court stayed the judgment of contempt pending resolution of
this appeal. The witness claims, among other things, that his
refusal to answer the questions posed to him was lawful in
that he had properly invoked his privilege against self-incrimi-
nation under the Fifth Amendment to the United States Con-
stitution and art. 12 of the Massachusetts Declaration of Rights.
We agree with the witness and reverse the Superior Court's
judgment of contempt.

The witness is employed as a pari mutuel manager at a race track in the eastern part of the Commonwealth. He was summoned on three separate occasions to appear before a special grand jury convened in Norfolk County. He was informed by the prosecution that the special grand jury was investigating possible illegal gaming operations at the track. On each occasion, the witness was asked questions as to (1) various aspects of his job; (2) his knowledge of track employees' either taking bets over the telephone or placing bets for persons not on the track's grounds; and (3) the cashing of winning tickets by individuals other than the ticket holders. To twenty of these questions he pleaded the Fifth Amendment and art. 12, refusing to answer on the ground that doing so would tend to incriminate him.

On April 25, 1989, the Superior Court judge held an in camera hearing on the Commonwealth's motion to compel the witness to answer the questions put to him by the prosecutor. At that hearing, the judge was informed by the prosecutor of the following facts: A special grand jury was empanelled in Norfolk County on October 24, 1988, for the purpose of investigating illegal gaming operations. An area of the investigation concerned certain activities that had allegedly occurred at the track at which the witness was an employee. One aspect of the investigation involved an inquiry into whether one Richard Boe,[1] father of the owner of the track, may have engaged in illegal gaming or gaming-related activity at the track in concert with the general manager of the track and others. More specifically, the special grand jury was investigating whether Boe, while not on track premises, may have relayed bets over the telephone to the general manager, who then placed the bets for Boe at the mutuels windows.[2] Another subject of the special

[1] We use fictitious names in this opinion because grand jury proceedings are secret, subject to a few exceptions not relevant here.

[2] Such activity violates G. L. c. 128A, § 5, as appearing in St. 1968, c. 97, § 1, which states in pertinent part: "No wagers on any race shall be received by a licensee unless they are made within the grounds . . . on the day such race is held by patrons who purchase their betting tickets at the windows or booths provided therefor." See G. L. c. 128A, § 12 for the possible penalties for the violation of § 5.

grand jury's investigation involved the cashing on October 29, 1987, of a winning twin trifecta ticket in the amount of $60,141.70, at the track. The ticket was cashed by an individual we shall call Goe. The Commonwealth was in possession of information, some of which had already been presented to the special grand jury, that showed that Boe, the general manager, and others had shared in the proceeds of the ticket, that the ticket was cashed in the witness's office, that the witness was the pari mutuel manager working at the track at the time and that Goe had signed an Internal Revenue Service (IRS) form upon receipt of the winnings. The special grand jury was also investigating the cashing of two winning tickets, each in the amount of $33,247.70, at the track on June 21, 1987, by Goe and another individual we name Hoe. These two individuals were suspected of being "straw men" or "ten percenters" for Boe, the general manager and others not yet identified, who shared in the proceeds of these three tickets. These "straw men" or "ten percenters" cashed the tickets, claiming the winnings on their income tax, thereby concealing the true identity of the person or persons who actually held ownership of the winning racing tickets. Such conduct, if proved, is a Federal crime because it obstructs the assessment and collection of Federal income taxes in violation of 26 U.S.C. § 7206 (1) (1982)[3] and 18 U.S.C. § 371 (1988).[4]

The judge reviewed each question asked of the witness by the prosecutor before the special grand jury. He ruled that the

---

[3] Title 26 U.S.C. § 7206 reads, in relevant part, that: "Any person who — (1) Declaration under penalties of perjury. — Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . . or imprisoned not more than 3 years, or both, together with the costs of prosecution."

[4] Title 18 U.S.C. § 371 states, in relevant part, that: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

witness did not have to answer six of them because the answers might directly incriminate him. As to the other fourteen questions, however, the judge declined to accept the claim of privilege and ordered the witness to answer the questions before the special grand jury.[5] That afternoon the witness again appeared before the special grand jury. At that time the prosecutor propounded those questions to which the judge had ordered the witness to respond. The witness refused to answer any of them, once again invoking his privilege against self-incrimination.

On April 27, 1989, the Commonwealth filed a petition in the Superior Court, seeking to have the witness declared in

---

[5] The fourteen questions which the judge ordered the witness to answer are the following:

(1) what are his specific duties as a pari mutuel manager?

(2) who assists him in the performance of his duties?

(3) whether he is responsible for filing the appropriate Department of Revenue (DOR) and Internal Revenue Service (IRS) forms when a wagerer cashes a ticket in an amount requiring such filings?

(4) whether winning tickets of large amounts are cashed in his office?

(5) what procedures are employed by the track with respect to DOR and IRS filings when a winning ticket is cashed in an amount requiring such filings?

(6) whether the race track and/or State Racing Commission policies prohibit track employees from betting at the track;

(7) whether he has any knowledge of Boe placing bets at the mutuels windows?

(8) whether he knows one Goe?

(9) whether he knows that Goe cashed a twin trifecta ticket in the amount of $60,141.70, at the track on October 29, 1987?

(10) whether he knows that Goe and Hoe each cashed tickets in the amount of $33,247.70, at the track on June 21, 1987?

(11) whether he cashed the winning tickets for Goe and Hoe on those dates?

(12) whether Goe and Hoe were given cash or issued checks in the amount of their winnings on those dates?

(13) whether he has any knowledge of IRS W-2G forms or any other IRS or DOR forms pertaining to the tickets that Goe cashed on October 29, 1987, and June 21, 1987, and the ticket that Hoe cashed on June 21, 1987?

(14) whether he has any knowledge as to what records, if any, currently exist regarding the $60,141.70 ticket that Goe cashed on October 29, 1987, and the $33,247.70 tickets that Goe and Hoe each cashed on June 21, 1987, and, if so, where are they located?

civil contempt of court and incarcerated until such time as he was willing to purge the contempt by testifying before the special grand jury as ordered. After a hearing, the Superior Court judge adjudged the witness to be in contempt.[6] This appeal followed.

A grand jury "has a right to every man's evidence." *Branzburg* v. *Hayes*, 408 U.S. 665, 688 (1972), cited with approval in *United States* v. *Nixon*, 418 U.S. 683, 709 (1974). An important exception to this principle is that a witness before a grand jury is entitled to assert his Fifth Amendment privilege against self-incrimination by refusing to answer questions. *Counselman* v. *Hitchcock*, 142 U.S. 547, 559 (1892). The claim of the privilege by a witness before a State's grand jury may be based on fear of a Federal as well as State prosecution. See *In re Brogna*, 589 F.2d 24, 27 (1st Cir. 1978).

In determining whether a claim of privilege is justified, we apply Federal standards. *Taylor* v. *Commonwealth*, 369 Mass. 183, 187 (1975). *Powers* v. *Commonwealth*, 387 Mass. 563, 564-565 (1982). "Under these standards, a witness who asserts his privilege cannot be compelled to testify unless it is ' *"perfectly clear* from a careful consideration of all the circumstances in the case that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency" to incriminate.'" (emphasis in original). *Powers* v. *Commonwealth, supra,* quoting from *Malloy* v. *Hogan*, 378 U.S. 1, 12 (1964), quoting from *Hoffman* v. *United States*, 341 U.S. 479, 488 (1951). The privilege covers not only answers that would in themselves support a conviction "but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute." *Malloy* v. *Hogan, supra* at 11, quoting from *Hoffman* v. *United States, supra* at 486.

The person asserting the privilege is not "required to prove the hazard [of incrimination] in the sense in which a claim is usually required to be established in court. . . ." *Hoffman* v.

---

[6] The witness has raised before us several issues regarding the procedures used by the judge at the contempt hearing. Because we find in favor of the witness, we do not address those issues.

*United States, supra* at 486. Rather, the privilege may validly be asserted whenever "the witness has reasonable cause to apprehend danger from a direct answer." *Id.* However, "[t]he fear must be reasonable in light of the witness's specific circumstances, the content of the questions, and the setting in which the questions are asked." *United States* v. *Jones,* 703 F.2d 473, 476 (10th Cir. 1983). Also see *Hoffman* v. *United States, supra* at 486-487; *Emspak* v. *United States,* 349 U.S. 190, 199 n.18 (1955). See *Murphy* v. *Commonwealth,* 354 Mass. 81, 83-84 (1968); *Taylor* v. *Commonwealth, supra* at 187-188; *Powers* v. *Commonwealth, supra* at 565; *Commonwealth* v. *Borans,* 388 Mass. 453, 456 (1983); *Commonwealth* v. *Sasu,* 404 Mass. 596, 600 (1989). See generally Wright, Federal Practice and Procedure: Criminal 2d § 407 (1982 ed.). It is for the trial court in the first instance to determine whether "a responsive answer to the question [posed] or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman* v. *United States, supra* at 487. In that regard, the judge must undertake a particularized inquiry as to each question because the witness may have a valid claim to the privilege with respect to some of the questions, but not with respect to others. *United States* v. *Goodwin,* 625 F.2d 693, 701 (5th Cir. 1980).

In the circumstances of the present case, it is far from clear that the witness's testimony cannot possibly incriminate him. The witness is the pari mutuel manager and, as such, supervises the betting at the track. Because of the nature of his position, the witness is in jeopardy of violating a number of statutes, both Federal[7] and State[8] that are concerned not only with illegal

---

[7] See, e.g., Federal gambling statutes — 18 U.S.C. § 1955, 18 U.S.C § 1511, 18 U.S.C. § 371; Federal aiding and assisting statutes — 18 U.S.C. §§ 2 (a), (b), 3, § 4; various Federal tax statutes including 26 U.S.C. §§ 3402 (q), (1), (3), (6) — requiring withholding of certain gambling winnings; 26 U.S.C. § 3403 — making the employer liable for gambling winnings withholding.

[8] See, e.g., Massachusetts gambling statutes: G. L. c. 271, § 16A — making supervision of at least four persons who are engaging in illegal gambling activities a criminal act; G. L. c. 271, § 17A — making the use of a telephone, or being the occupant in control of premises where the

gambling but also the payment of taxes on some successful wagers made at the track. Here, the special grand jury was in possession of information that certain transactions involving the cashing of winning trifecta tickets by Goe on October 29, 1987, and Goe and Hoe on June 21, 1987, had taken place in the witness's office while he was on duty. Those transactions, which the Commonwealth believed to be illegal, were the focus of many of the questions as to which the witness claimed his privilege.[9] Because of his position as pari mutuel manager, the witness was in close proximity not only to the allegedly illegal conduct but also to the individuals who were the targets of the investigation as well as to several of the "others" with whom the special grand jury believed the targets may have conspired. Therefore, as to those questions (see n.9), because of the witness's specific circumstances, the content of the questions, and the setting in which the questions were asked, the witness was justified in claiming his privilege against self-incrimination.

The witness, for the reasons stated above, was also justified in not answering the remaining questions.[10] Although these questions appear to be innocent, a witness is not required to answer even an innocuous question if the setting suggests a substantial and real hazard of incrimination. *Emspak* v. *United States*, 349 U.S. 190, 200-201 (1955). *In re Atterbury*, 316 F.2d 106, 109-110 (6th Cir. 1963) ("Answers to questions which at first blush may appear wholly innocuous, may, under

---

telephone is located for the purpose of accepting wagers or bets on gambling activities a criminal act; G. L. c. 271, § 31A — making illegal the transmission of racing results through means intended to be used for unlawful purposes; G. L. c. 128A, § 5 — making illegal the taking of any wagers not made within the grounds; G. L. c. 128A, § 6 — requirement to keep accurate records; G. L. c. 128A, § 9 — making it a violation of law for anyone who holds or conducts (or anyone aiding or abetting) any racing meeting not in compliance with chapter 128A; G. L. c. 128A, § 13 — making use of a handbook, or holding or conducting a gambling pool not in compliance with chapter 128A a criminal offense; Massachusetts racing regulation 205 C.M.R. §§ 5.00 et seq.; Massachusetts aiding and assisting statutes (G. L. c. 274, §§ 2, 4, 7).

[9] See questions 3, 4, 5, 8, 9, 10, 11, 12, 13, 14 in note 5, *supra*.

[10] See questions 1, 2, 6, 7, in note 5, *supra*.

certain existing circumstances, furnish a link connecting the witness with a criminal act and show that the danger apprehended by the witness was not fanciful"). In the circumstances, the answers to those questions could furnish a link in the chain of evidence needed to prosecute the witness.

Finally, the Commonwealth contends that the witness cannot validly assert his privilege against self-incrimination because he is not a "target" of the investigation and that neither it nor the special grand jury has any evidence to suggest any wrongdoing on the witness's part or that would implicate him. This argument is without merit. "[T]he right to assert one's privilege against self-incrimination does not depend on the *likelihood*, but upon the *possibility* of prosecution." (emphasis in original). *In re Master Key Litigation*, 507 F.2d 292, 293 (9th Cir. 1974), citing *Hoffman* v. *United States*, *supra* at 486-487. See also, *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872 (7th Cir. 1979).

*Judgment reversed.*

*Judgment for the witness.*