## Commonwealth *vs.* Luman Martin.

Suffolk. May 9, 1996. - August 12, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Greaney, & Fried, JJ.

*Practice, Criminal,* Report, Grand jury proceedings, Voir dire. *Constitutional Law,* Self-incrimination, Waiver of constitutional rights. *Grand Jury. Witness,* Self-incrimination.

A judge in a criminal matter properly reported two questions pursuant to Mass. R. Crim. P. 34. [499-500]

In a criminal proceeding, a witness's compelled testimony before the grand jury did not operate as a waiver of his right to invoke his privilege against self-incrimination if he is called as a witness at the subsequent trial of a defendant indicated by that grand jury. [500-501]

Discussion of cases considering whether a witness's claim of the privilege against self-incrimination is justified. [501-503]

On the record of a criminal proceeding, the judge could reasonably conclude that a witness who had been compelled to testify before the grand jury did not establish a sufficient foundation by reason of the possibility of perjury charges based on his testimony to invoke his privilege against self-incrimination at the subsequent trial. [503-504]

In a criminal proceeding, in which a witness who was compelled to testify before the grand jury invoked the privilege against self-incrimination at the subsequent trial and in which the witness did not establish a sufficient foundation to claim a right to invoke the privilege, the judge has authority to conduct an in camera examination of the witness in order to make an informed determination whether the witness has properly asserted the privilege. [504-505]

Indictments found and returned in the Superior Court Department on February 24, 1994.

Questions of law were reported to the Appeals Court by *Patrick F. Brady*, J. The Supreme Judicial Court transferred the case on its own initiative.

*Stephen Neyman* for Wayne Thompson.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

Greaney, J. A judge in the Superior Court reported two questions to the Appeals Court pursuant to Mass. R. Crim.

P. 34, 378 Mass. 905 (1979). The first question asks whether one of the alleged victims in the defendant's case could properly invoke his privilege against self-incrimination, based on the Fifth Amendment to the United States Constitution or art. 12 of the Declaration of Rights to the Massachusetts Constitution, by simply asserting, through counsel, that his testimony at trial might differ materially from his prior grand jury testimony, thus creating the risk of prosecution on a charge of perjury. Also at issue is whether, by testifying before the grand jury, the witness waived his right to invoke the privilege, and therefore could not lawfully refuse to testify at the defendant's trial. The second question asks whether the judge could properly conduct an in camera or voir dire hearing of the alleged victim to determine whether the claim of privilege was being properly invoked. We transferred the case to this court on our own motion. We conclude that the alleged victim has not waived his right to claim the privilege. We further conclude that a judge is not bound in all cases to accept a witness's assertion of the privilege, and that a judge, in appropriate circumstances, may conduct a limited in camera examination of a reluctant witness to ascertain whether the privilege has been properly invoked.

The background pertinent to the reported questions is as follows. The defendant, Luman Martin, has been indicted on charges of armed assault with intent to murder, in violation of G. L. c. 265, § 18 (1994 ed.); unlawful possession of a firearm, in violation of G. L. c. 269, § 10 (*a*) (1994 ed.); assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A (1994 ed.); and assault by means of a dangerous weapon, in violation of G. L. c. 265, § 15B (1994 ed.). The sole witness to testify before the grand jury was Wayne Thompson, the primary target of the alleged assault. Thompson was compelled to testify before the grand jury by means of a capias issued after he had failed to respond to a grand jury summons. He was not advised of his privilege against self-incrimination prior to testifying nor did he consult with an attorney prior to his grand jury appearance.

The substance of Thompson's testimony was that on January 27, 1994, at approximately 7:30 P.M., he was standing outside of the building at 279 Centre Street in the Jamaica Plain section of Boston. The defendant came out of 279 Cen-

tre Street holding a small caliber handgun, approached Thompson, put the gun to Thompson's head and told Thompson to "brace [him]self." At that point, Robert Irby, the uncle of Thompson's girl friend, also came out of 279 Centre Street, saw what was happening, and intervened. Irby and the defendant struggled. The defendant wrenched himself free, hit Irby on the side of the head with the gun, fired two shots at him from close range, and ran away with two companions, whom Thompson identified by name. Thompson knew the defendant "[f]rom growing up in the projects," and, as of the date of the assault, had known him for about three years.[1] Irby has been unable to identify the defendant as his assailant.

In a motion to dismiss filed before trial, the defendant asserted that several months after Thompson had testified before the grand jury, Thompson told the defendant's investigator that the perpetrator of the assault had been masked, a point that had not been part of Thompson's grand jury testimony. The trial judge denied the motion to dismiss on the ground that there was no evidence that the prosecution had been aware of this information before the grand jury proceedings.

Thompson failed to appear on the first scheduled trial date. On the day the case was rescheduled for trial, Thompson told the prosecutor that he wanted to speak with a lawyer about his impending testimony. The judge appointed counsel, who, after consulting with Thompson, informed the judge that Thompson wished to invoke his privilege against self-incrimination under the Federal and State Constitutions. Counsel informed the judge that he was "convinced" that "Thompson's invocation of the privilege was proper, because his trial testimony would . . . subject him to perjury charges arising from his grand jury testimony."

The Commonwealth asked the judge to order Thompson to testify. In his written order denying this request, the judge stated that despite his "strong suspicion that [Thompson was] improperly invoking his [self-incrimination] privilege to avoid testifying for ulterior motives," it was not "perfectly clear" that Thompson's trial testimony would not incriminate him.

---

[1]According to the judge, Thompson's grand jury testimony was very similar to the information Thompson provided to the police shortly after the assault. Thompson's statement to the police had been incorporated in the police report on the incident, and this report was before the judge.

The judge stated that, although he wanted to conduct an in camera "colloquy [to] help [him] determine the validity of the claim of privilege," he had found no authority permitting such an inquiry, and "[he was] reluctant to order it in the absence of authority."

Thereafter, at the Commonwealth's request and pursuant to Mass. R. Crim. P. 34, the judge reported these two questions:

> (1) "Can a reluctant witness invoke his privilege against self-incrimination and thereby avoid testifying at trial simply by asserting that his trial testimony would differ from his grand jury testimony and thus might subject him to perjury charges?"

> (2) "What steps, such as an *in camera* or *voir dire* examination of the witness, may the judge properly take in an effort to make an informed determination of whether the witness has improperly invoked the privilege based on anticipatory perjury rather than past perjury?"

1. As an initial matter, counsel for Thompson argues that the report is improper because the questions reported are not, in the words of rule 34, "so important or doubtful" as to require an appellate opinion prior to trial. Interlocutory review by way of report is proper when serious questions are involved which are likely to be material to the ultimate outcome of a criminal proceeding and when it appears that subsequent trial court proceedings will be substantially facilitated by an appellate resolution. See *Commonwealth* v. *Colon-Cruz*, 393 Mass. 150, 155 (1984). A report in this instance is proper. Implicit in the judge's first reported question is the issue whether someone who has testified before a grand jury has thereby waived his right to invoke his privilege against self-incrimination if he is called as a witness at a subsequent trial on indictments issued by that grand jury. The waiver issue, which has been left somewhat unclear by our decisions, has been raised repeatedly and may have a significant impact on the rights of witnesses and defendants as well as the Commonwealth's ability to prosecute. The question of in camera examination has not been discussed in an appellate opinion in this State. We conclude that the report

raises questions which have an impact on the effective administration of the criminal justice system. Answers to these questions also will have an impact on the outcome of this case: it would appear that the Commonwealth may not be able to proceed on these indictments, which charge serious crimes, without Thompson's testimony. Our answers to the reported questions may have an effect on the availability of Thompson's testimony.

2. The first reported question logically breaks down into two parts. The first aspect of the question is whether, as argued by the Commonwealth, Thompson can be found to have waived the right to claim his privilege against self-incrimination at trial based on his testimony before the grand jury. Assuming a negative answer on this point, the second part of the question asks whether the simple assertion by Thompson that his trial testimony will differ from his grand jury testimony is sufficient to support the conclusion that the privilege is being invoked properly.

a. A witness who voluntarily testifies regarding an incriminating fact waives his privilege against self-incrimination "as to subsequent questions seeking related facts." *Taylor* v. *Commonwealth*, 369 Mass. 183, 189 (1975). This is so because, once a witness has freely provided testimony tending to incriminate himself, "continued testimony as to details would no longer tend to incriminate" him. *Id.* at 190. A contrary rule [would allow] the testimony to remain in a witness-selected posture [which] would result in serious, unjust distortion." *Id.* This principle has been referred to as the "waiver by testimony" rule.

In the *Taylor* case, we adopted the majority position that the waiver by testimony rule applies only "to the proceeding in which [the testimony] is given and does not extend to subsequent proceedings." *Id.* at 191. In two subsequent cases, *Commonwealth* v. *Borans*, 388 Mass. 453 (1983), and *Palaza* v. *Superior Court*, 393 Mass. 1001, 1002 (1984), it was established clearly that grand jury proceedings leading to the indictment of a defendant, and that defendant's subsequent trial, are *separate* proceedings for the purposes of the waiver by testimony rule and that a witness (like Thompson) cannot be deemed to have waived the right to claim his privilege against self-incrimination for all purposes by testifying before

the grand jury.[2] In the *Palaza* decision, we took pains to foreclose reliance on dicta in *Matter of DeSaulnier (No. 2)*, 360 Mass. 761, 766 (1971), which stated, somewhat expansively, that a "witness's privilege [against self-incrimination] is to be deemed waived . . . where the proceeding in which the privilege is invoked is a probable, logical, or natural continuation or outgrowth of the proceeding or inquiry in which prior testimony has been given by the witness."

Some confusion has arisen over the subject, presumably because of a reference in our decision in *Luna* v. *Superior Court*, 407 Mass. 747, 751, cert. denied, 498 U.S. 939 (1990), suggesting reapproval of the dicta in the *DeSaulnier* decision. In the *Luna* case, this court affirmed a single justice's determination that, by submitting a self-incriminating affidavit in conjunction with the Commonwealth's motion for reconsideration of the dismissal of an indictment, a prospective witness had waived his privilege, and that his waiver extended to testimony at the subsequent criminal trial on the reinstated indictment. *Luna* v. *Superior Court, supra* at 750. The decision in *Luna* treated the motion for reinstatement of the indictment against Albert Lewin, as a part of the trial against Lewin, and reasoned that, by furnishing testimony in connection with the motion, the witness, Luna, had waived his privilege against self-incrimination with respect to testifying at the trial on the reinstated indictment. The *Luna* case was decided on the basis of the rule adopted in the *Taylor* case, and applied in the *Borans* and *Palaza* cases. We remain firmly of opinion that testimony before a grand jury should not be considered a waiver of a witness's privilege against self-incrimination for the purpose of offering testimony at a subsequent trial on an indictment returned by that grand jury. It follows that Thompson's testimony before the grand jury does not operate as a waiver of his right to invoke his privilege against self-incrimination if he is called as a witness at the defendant's trial.

b. The second part of the first question asks whether a judge is required to accept an invocation of the privilege on

---

[2]The waiver by testimony rule "is not based on any true waiver theory at all in the usual sense of a voluntary, intelligent relinquishment of a known right." *Taylor* v. *Commonwealth*, 369 Mass. 183, 189 (1975). Nonetheless, we note that Thompson is an involuntary witness who has consistently declined to testify at the defendant's trial.

the basis of a flat assertion by a witness that the forthcoming testimony at trial will differ from the testimony the witness offered before the grand jury. Under art. 12, we apply broad standards, consistent with Federal standards, in determining whether a claim of privilege is justified. See *Taylor* v. *Commonwealth, supra* at 187. See also *Commonwealth* v. *Sasu,* 404 Mass. 596, 600 (1989). The standards are highly protective of the constitutionally guaranteed right against self-incrimination. "A witness may refuse to testify unless it is *'perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate (emphasis in original)." *Commonwealth* v. *Funches,* 379 Mass. 283, 289 (1979), quoting *Hoffman* v. *United States,* 341 U.S. 479, 488 (1951). "The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute." *Commonwealth* v. *Funches, supra,* quoting *Ullmann* v. *United States,* 350 U.S. 422, 429 (1956).

Nonetheless, a witness may not rely on a bald assertion of his privilege if the circumstances do not clearly indicate a possibility of self-incrimination. See *United States* v. *Goodwin,* 625 F.2d 693, 700-701 (5th Cir. 1980). It is for a judge, rather than a witness or his attorney, "to decide whether a witness'[s] silence is justified." *In re Morganroth,* 718 F.2d 161, 167 (6th Cir. 1983). See *Hoffman* v. *United States, supra* at 486; *United States* v. *Goodwin, supra* at 701 (faced with assertion of privilege, the judge should determine whether witness's fear of self-incrimination is justified). A witness must show a real risk that his answers to questions will tend to indicate his involvement in illegal activity, "and not a mere imaginary, remote or speculative possibility of prosecution." *In re Morganroth, supra* at 167. A witness also is not entitled to make a blanket assertion of the privilege. The privilege must be asserted with respect to particular questions, and the possible incriminatory potential of each proposed question, or area which the prosecution might wish to explore, must be considered. *Id.* See *United States* v. *Goodwin, supra* at 700-701; *United States* v. *Melchor Moreno,* 536 F.2d 1042, 1049

(5th Cir. 1976).[3] A witness's fear of possible reprisals against himself or members of his family is not a valid reason for refusing to testify. See *In re Grand Jury Proceeding*, 13 F.3d 459, 461 (1st Cir. 1994), and cases cited.

Through counsel, Thompson has claimed that, if he is required to testify at the defendant's trial, he may lay himself open to charges of perjury because there is the possibility of material differences between his proposed testimony and the testimony he previously gave before the grand jury.[4] The judge is not bound to accept counsel's representation on this point; in fact, he has a duty to satisfy himself that invocation of the privilege is proper in the circumstances of the case. See *In re Morganroth, supra* at 169; *United States* v. *Goodwin, supra* at 700-701. While it may be possible to infer that Thompson's claim of the privilege rests on his assertion, first made after he testified before the grand jury, that he now remembers that the perpetrator of the assault was masked, the judge has not been informed directly that this is the basis of Thompson's claim of the privilege. Moreover, this assertion is not necessarily inconsistent with Thompson's grand jury testimony, because it does not appear that Thompson was asked about a mask. Thompson testified before the grand jury that he knew the defendant to be his assailant, but, if Thompson knew the perpetrator well, a mask, in fact, might be no impediment to recognition.

In addition, as the judge noted, a witness may "not claim the privilege out of fear that he will be prosecuted for perjury for what he is about to say, although he may claim the privilege if his new testimony might suggest that he had perjured himself in testifying on the same subject at a prior proceeding." *Commonwealth* v. *Borans, supra* at 457, quoting *United States* v. *Partin*, 552 F.2d 621, 632 (5th Cir.), cert. denied, 434 U.S. 903 (1977). In contrast to the situation where another witness's testimony casts doubt on the veracity of the

---

[3]The prosecutor's denial of an intent to prosecute a witness is not sufficient to defeat an assertion of the privilege. See *Commonwealth* v. *Borans*, 388 Mass. 453, 459 (1983), and cases cited.

[4]Nothing in the record before the judge suggests that Thompson was anything other than an innocent victim. This case is distinguishable, therefore, from cases in which circumstances suggest that a witness may be guilty of a substantive crime, and is permitted on this basis to decline to offer testimony. See, e.g., *Matter of Proceedings Before a Special Grand Jury*, 27 Mass. App. Ct. 693, 698-700 (1989).

prior testimony of the witness claiming the privilege, there is nothing in the general circumstances of this case to suggest that Thompson's testimony before the grand jury was inaccurate. On this record, the judge reasonably could conclude that Thompson has not established a sufficient foundation for invocation of his privilege against self-incrimination. See *In re Morganroth, supra* at 167-168.

2. The second reported question asks whether the judge may conduct an in camera or voir dire examination so as to make an informed determination whether the witness has properly invoked his privilege against self-incrimination.

The preference in our judicial system is for proceedings open to the scrutiny of the parties and the public. Nonetheless, we have recognized that certain information cannot be revealed in open court without jeopardizing interests that must be protected. For example, in *Commonwealth* v. *Amral,* 407 Mass. 511, 520-521 (1990), we approved the use of an in camera hearing when a defendant challenges the truth of statements made by an affiant in support of an application for a search warrant. Similarly, when a witness's right against self-incrimination is in issue, a judge's inquiry will be directed at potentially sensitive information which, assuming the privilege applies, the parties (prosecution and defense) are not entitled to hear. For this reason, Federal courts have approved the use of an in camera inquiry when a claim of privilege is made and the information available to the judge does not, in the judge's estimation, afford adequate verification of the witness's assertion of the privilege. See *United States* v. *Goodwin, supra* at 701; *In re Brogna,* 589 F.2d 24, 28 & n.5 (1st Cir. 1978). We agree that in these unusual circumstances, a judge has the authority to conduct an in camera hearing with a witness who has asserted his privilege.

We stress, as have the Federal decisions which have discussed this procedure, that the permissible scope of inquiry open to a judge is narrow. "A proper use for an in camera hearing is to allow a witness to impart sufficient facts in confidence to the judge to verify the privilege claim . . . the judge is simply providing the most favorable setting possible for the witness to 'open the door a crack' where there is no other way for the witness to verify his claim." *In re Brogna, supra* at 28 n.5. Even in an in camera setting, the witness should only be required to disclose the limited additional

amount of information that will permit the judge to assess the witness's assertion of the privilege under the generous standards that normally govern its invocation. In attempting to establish his right to the privilege, a witness should not be required to disclose so much that the privilege is effectively destroyed. *Id.* See also *Matter of U.S. Hoffman Can Corp.*, 373 F.2d 622, 628 (3d Cir. 1967).

An in camera hearing, of course, would be limited to the witness, his counsel, and the judge, see *United States* v. *Fricke*, 684 F.2d 1126, 1131 (5th Cir. 1982), cert. denied, 460 U.S. 1011 (1983), who may, if the judge considers it appropriate to do so, discuss with the witness and the witness's counsel limits on the privilege against self-incrimination that may apply to the witness in the circumstances of the particular case. A record of the hearing should be kept, under seal, which would be opened only on appellate review, in the event that it is claimed that the witness had improperly invoked the privilege. See *United States* v. *Goodwin, supra* at 702.

The foregoing discussion provides answers to the questions reported by the judge. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*