NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1410

COMMONWEALTH

vs.

DARREN C. MORAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial in the District Court, the defendant was found guilty of failure to stop for the police and negligent operation of a motor vehicle.  Because the defendant has not persuaded us that the judge erred in allowing a percipient witness to identify the defendant in court or that any prejudicial error resulted from the trial judge's rulings about the extent of another witness's privilege under the Fifth Amendment to the United States Constitution, we affirm.

Background.  We briefly summarize the trial evidence, reserving certain facts for later discussion.  At approximately 2 A.M. on November 1, 2020, Lakeville police Officer Emily Melo was on patrol when she saw a grey Kia drive through a red light.

Melo activated her emergency lights and followed the Kia; it abruptly turned, such that it was driving in the wrong lane of travel, and then slowly stopped. When Melo stopped her cruiser and got out, the Kia "took off," making a U-turn and then turning left and driving away. As the Kia turned left, Melo saw the driver. Melo pursued the speeding Kia through Lakeville into Middleboro, where the driver of the Kia abandoned the car and fled on foot.

Melo conducted an inventory search of the Kia, which was registered to a woman, E.R., and found an empty prescription bottle bearing the name "Darren Moran" in the Kia's center console and a sweatshirt with a company logo on it in the Kia's back seat. Initially, Melo looked up the defendant using his license number, which was radioed to her, but she did not recognize the "one-by-one little picture" from the registry of motor vehicles (RMV) that the search returned. Melo then searched Facebook and found photographs of the defendant whom she recognized "a hundred percent" as the driver of the Kia.

The defendant was arrested several days later; there was no evidence that Melo was the arresting officer.

Discussion. 1. Identification procedures. a. In-court identification. At trial, and without objection, Melo identified the defendant as the person she saw driving the Kia. On appeal, the defendant argues that the judge erred in allowing

2

Melo to make an in-court identification of the defendant because (1) Melo did not make a constitutionally permissible out-of-court identification of the defendant before being permitted to identify him in court, and (2) the Commonwealth failed to demonstrate a "good reason" for the in-court identification, as required in the absence of a prior permissible out-of-court identification. See Commonwealth v. Crayton, 470 Mass. 228, 241-242 (2014). The defendant did not object to the in-court identification, so to the extent we discern error, our review is for a substantial risk of a miscarriage of justice. See, e.g., Commonwealth v. Belnavis, 104 Mass. App. Ct. 798, 801 (2024).

The defendant argues that in Crayton, the Supreme Judicial Court limited "[a]cceptable pre-trial identification procedures" to "non-suggestive photo array[s], suspect lineup[s], or show-up[s]," and that Melo's use of Facebook could not qualify. We do not read Crayton so literally. Although the record provides no detail about how many results Melo's Facebook search for "Darren Moran" returned, for the purposes of our analysis we assume without deciding that the search turned up only a single photograph, and that it was therefore the equivalent of a one-on-one showup identification. See Commonwealth v. Forte, 469 Mass. 469, 477 (2014); Commonwealth v. Nolin, 373 Mass. 45, 51 (1977). And as we have described, Melo was unequivocal about her Facebook identification; the defendant does not argue

3

otherwise.[1]  See Commonwealth v. Dew, 478 Mass. 304, 315 (2017)

("unequivocal positive identification" occurs if witness

"identifies the defendant as the perpetrator, such that the

statement of identification is clear and free from doubt").

Accordingly, we do not address the defendant's argument that the

Commonwealth failed to demonstrate "good reason" justifying an

in-court identification in the absence of a prior out-of-court

identification.  See Crayton, 470 Mass. at 241.  See also

Commonwealth v. Collins, 470 Mass. 255, 265 (2014) (requiring

good reason for in-court identification where out-of-court

identification was less than unequivocal).

     b.  Out-of-court identification.  To the extent that the

defendant challenges the admissibility of the out-of-court

identification, he has not demonstrated that the identification

was so unnecessarily suggestive as to be inadmissible.  Although

showup identifications "are generally disfavored as inherently

suggestive," they are not "presumptively impermissible."  Dew,

478 Mass. at 306.  "Police are permitted to conduct a showup

identification if there is a 'good reason' to secure the prompt

identification of a suspect."  Id. at 307.  "In determining

---

[1] The defendant only argues that Melo's in-court identification was less credible, in part due to her failure to identify the defendant from his RMV photograph and the suggestiveness of the Facebook search.

4

whether the police procedures rendered the identification unnecessarily suggestive," and simultaneously, whether the police had the requisite "good reason," a judge must "examine 'the totality of the circumstances attending the confrontation.'" Commonwealth v. German, 483 Mass. 553, 558-559 (2019), quoting Commonwealth v. Odware, 429 Mass. 231, 235 (1999). The analysis includes consideration of

> "the nature of the crime involved and corresponding concerns for public safety; the need for efficient police investigation in the immediate aftermath of a crime; and the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track."

Commonwealth v. Austin, 421 Mass. 357, 362 (1995). "'Good reason' exists where some combination of the factors collected [above] is present." Commonwealth v. Carlson, 92 Mass. App Ct. 710, 713 (2018). "Even where there is a good reason to conduct a one-on-one identification procedure, the evidence must be excluded [i]f there are special elements of unfairness . . . ." (quotation and citation omitted). Dew, supra at 307. "It is the defendant's burden to prove by a preponderance of the evidence that the showup was 'so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [the defendant] due process of law.'" Commonwealth v. Martin, 447 Mass. 274, 279-280 (2006), quoting Odware, supra.

5

Our analysis of the defendant's argument is complicated by his failure to develop a factual record about the Facebook identification:  he neither moved to suppress the evidence of that identification, nor asked for a voir dire of Melo before she identified the defendant in court, nor examined Melo about what she saw when she used the defendant's name to search that platform.  Cf. Crayton, 470 Mass. at 233-234 (defendant moved before trial to preclude in-court identification and requested voir dire of identifying witnesses).  We are not blind to the risk that Melo's identification of the defendant on Facebook could have been influenced by Melo's awareness that the search was limited to the name on the pill bottle she found in the Kia and by the appearance in the search results of the same company logo as the one on the sweatshirt she found in the Kia. However, on the limited record before us, we have no particularized evidence -- much less any findings by the trial court judge -- of how the Facebook search was conducted, the scope of the search results, or the details about how Melo recognized the defendant from the search results.

Nor can we say that the defendant carried his burden of showing that Melo lacked "good reason," Dew, 478 Mass. at 306-307, for the Facebook identification.  Even if any immediate concerns for public safety had abated once the defendant abandoned the Kia and fled on foot, so far as the record

reveals, Melo's search was conducted shortly after she saw the defendant speeding on the wrong side of the road and thus could reasonably be viewed as part of an effort to rule "Darren Moran" in or out as the Kia's driver. See Austin, 421 Mass. at 362. Thus, because the defendant has not shown that Melo lacked good reason for conducting the Facebook identification nor the existence of "special elements of unfairness," Dew, supra at 307 (citation omitted), we cannot conclude that the out-of-court identification was unnecessarily suggestive.

At bottom, the defendant has not persuaded us that the judge erred in allowing Melo to identify the defendant in court, or in admitting evidence of the out-of-court identification. See Dew, 478 Mass. at 306-307, 315; Austin, 421 Mass. at 362. Given our conclusion, we need not address whether any error would have created a substantial risk of a miscarriage of justice.

2. E.R.'s testimony. At trial, Lakeville police Officer Weston Fazzino testified that on the afternoon of November 1, 2020, the defendant came into the police station with the Kia's registered owner, E.R., to file a stolen vehicle report. As relevant to our analysis, Fazzino testified that E.R. told him who had been driving the Kia the night before, although he was not permitted to repeat E.R.'s statement identifying the driver, and that the defendant and E.R. left the police station without

7

filing a stolen motor vehicle report.[2]  After holding an in

camera hearing at which E.R. was represented by her own counsel,

the judge concluded that E.R. had a valid Fifth Amendment

privilege as to "some questions" she might be asked, but the

judge nonetheless permitted the prosecutor to call E.R. as a

witness and required E.R. to answer certain questions.  See

Commonwealth v. Martin, 423 Mass. 496, 504-505 (1996).  The

defendant objected to this procedure.

On appeal, the defendant argues that the judge erred in

requiring E.R. to answer certain questions because her answers

to those questions exposed her to the possibility of being

prosecuted under G. L. c. 269, § 13A, for making a false report

to the police, and G. L. c. 268, § 13B, for misleading

investigators.  This argument is unavailing if for no other

reason than that there was no evidence to show that either E.R.

or the defendant actually reported the Kia stolen.  General Laws

c. 269, § 13A, punishes one who "intentionally and knowingly

makes or causes to be made a false report of a crime to police

officers."  See Commonwealth v. Gernrich, 476 Mass. 249, 252

(2017) ("The plain language of G. L. c. 269, § 13A, conveys a

_____

[2] Fazzino testified that he asked E.R. who was driving the
car and based on her response to that question, determined that
the defendant had been the driver.  This determination was
struck, however, after the defendant objected to it.

8

single statutory purpose:  the prohibition of a false report of a crime to 'police officers'").  As relevant here, G. L. c. 268, § 13B, punishes one who willfully misleads a police officer.  See Commonwealth v. Rateree, 495 Mass. 610, 626 (2025) (for purposes of G. L. c. 268, § 13B, statutory violation requires both "knowing or intentional conduct that is objectively misleading" and "specific intent to 'impede, obstruct, delay, harm, punish, or otherwise interfere thereby' with a criminal investigation" [citation omitted]).  Whatever E.R. or the defendant intended to do when they went to the Lakeville police station, Fazzino's uncontroverted testimony was that they left the police station without filing a report, and nothing else in the evidence at trial suggested that E.R. misled the police about any fact or did anything intended to interfere with a police investigation.

Because on this record there can be no doubt that the answers E.R. gave at trial could not possibly tend to incriminate her, see Commonwealth v. Borans, 388 Mass. 453, 456 (1983), the defendant has not demonstrated that the judge erred by intruding on E.R.'s privilege against self-incrimination by requiring her to provide the limited testimony she gave at trial.  Given our conclusion, we do not reach the question of prejudice stemming from the judge's ruling on the scope of

9

E.R.'s Fifth Amendment privilege or the cumulative effect of the errors the defendant argues in his brief.

Judgment affirmed.

By the Court (Henry, Hand & Allen, JJ.[3]),

Clerk

Entered:  March 31, 2026.

---

[3] The panelists are listed in order of seniority.