COMMONWEALTH *VS.* TYRONE BELL & another.[1]

Suffolk. May 4, 2004. - June 21, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Controlled Substances. "School Zone" Statute. Statute,* Construction. *Practice, Criminal,* Appeal by Commonwealth. *Supreme Judicial Court,* Superintendence of inferior courts. *Words,* "Secondary school."

This court concluded that a petition by the Commonwealth for interlocutory review in a criminal case constituted an exceptional occasion appropriate for this court to act under G. L. c. 211, § 3, to correct and prevent errors and abuses, where the issue raised by the Commonwealth's petition was not solely evidentiary, but presented the question how the trial judge should instruct the jury on an essential element of the offense; where the issue could not be avoided and, without immediate intervention, would arise soon again; and where the Commonwealth had no other means of effective appellate review. [122]

This court concluded that, at the trial of a criminal complaint charging the defendant with distribution of a class B substance (crack cocaine) within 1,000 feet of an alternative education program, in violation of G. L. c. 94C, § 32J, the school zone statute, regulations promulgated by the Department of Education (department) defining and imposing certain requirements on secondary schools could not serve as the sole definition of a "secondary school" under the school zone statute, where the department's restrictive regulations would clearly negate the intent of the Legislature to provide drug-free school zones. [122-126]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on November 28, 2003.

The case was reported by *Spina,* J.

*Michelle Learned,* Assistant District Attorney, for the Commonwealth.

*Esther J. Horwich* for Tyrone Bell.

*Susan E. Neff* for Wade Crawford.

GREANEY, J. We must decide whether an alternative education program located in Boston, ABCD University High School, can

[1]Wade Crawford.

be a "secondary school" within the meaning of G. L. c. 94C, § 32J, the school zone statute. Tyrone Bell and Wade Crawford were charged in complaints filed in the Boston Municipal Court with distribution of a class B substance (crack cocaine) in violation of G. L. c. 94C, § 32A, and distribution of the substance within 1,000 feet of ABCD University High School, in violation of the school zone statute. Before trial, the Commonwealth sought to preclude defense counsel from referencing, in opening statements, certain regulations promulgated by the Department of Education (department) that define a "secondary school" and impose certain requirements on secondary schools. Defense counsel sought to use the regulations to establish that ABCD University High School is not a secondary school under the school zone statute. After proceedings described below, the Commonwealth filed a petition for relief pursuant to G. L. c. 211, § 3, seeking "a supervisory order" precluding "the [judges] of the Boston Municipal Court from admitting into evidence regulations promulgated by the [department] that define 'secondary school,' and any expert testimony about said regulations, in school zone cases." A single justice of this court reserved and reported the case, without decision, to the full court. We conclude that the Commonwealth is entitled to relief.

A private, nonprofit, incorporated human services agency, Action for Boston Community Development (ABCD), operates ABCD University High School, in collaboration with the Boston Public Schools, as a "satellite" alternative education program. The school was established to solve a student capacity problem, to leverage Federal funding, and to provide a cost-effective, alternative education for students who would "historically drop out of school." ABCD University High School offers classes for grades nine through twelve for "at-risk" students at Boston public high schools and some students from Cambridge Rindge and Latin School. ABCD University High School follows a Boston public school calendar so that its students may fulfil Boston public school graduation requirements. There are approximately one hundred students at ABCD University High School. The school is open from 8:10 A.M. to 1:19 P.M. The students attending ABCD University High School remain

registered at their "home" high schools, and receive diplomas from their "home" high schools. While ABCD University High School offers students some after-school activities, its students, who have not been expelled from their "home" schools, may seek permission to participate in sports programs at their "sending" schools.

We next outline the complicated proceedings that led to this petition. After the defendants' arraignments, the Commonwealth filed a motion in limine, seeking to preclude counsel for the defendant Bell[2] from referencing in her opening statement regulations promulgated by the department that define a "secondary school" and list requirements that secondary schools must meet. One regulation defines a "[s]econdary school" as "any school, be it public or private, that has been designated or approved as a secondary school by the school committee." 603 Code Mass. Regs. § 33.03 (1993). Other regulations impose requirements on secondary schools, including a requirement that the school year "includes at least 185 school days," see 603 Code Mass. Regs. § 27.03(2) (1998), and a requirement "that every secondary school student is scheduled to receive a minimum of 990 hours per school year of structured learning time,"[3] see 603 Code Mass. Regs. § 27.04(2) (1998). A Boston Municipal Court judge continued Bell's case without an express ruling on the Commonwealth's motion. The Commonwealth moved to report questions of law to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), and to stay the proceedings. The judge denied the motion to report, and he again continued the case. After considering various other mo-

---

[2]This matter derived from proceedings in Bell's case, but pertains also to Crawford's case. Both cases stem from the same undercover drug "buy" and have been scheduled for trial together.

[3]"Structured learning time" means "time during which students are engaged in regularly scheduled instruction, learning activities, or learning assessments within the curriculum for study of the core subjects and other subjects." 603 Code Mass. Regs. § 27.02 (1998). This time does not include "[t]ime which a student spends at school breakfast and lunch, passing between classes, in homeroom, at recess, in non-directed study periods, receiving school services, and participating in optional school programs . . . ." 603 Code Mass. Regs. § 27.04(2) (1998).

tions and memoranda filed by both parties,[4] this judge entered an order referring the Commonwealth's motion in limine to the trial judge, and denying (for a second time) the motion to report. Concerning the motion in limine, the judge stated that, assuming he had previously made any preliminary rulings, such rulings were "revoked."

On the day scheduled for trial, the Commonwealth moved to stay the proceedings in order "to seek further appellate action pursuant to G. L. c. 211, § 3." A different Boston Municipal Court judge held a hearing on outstanding pretrial matters, including the Commonwealth's motion to stay, which, as best we can determine from the audible portion of the hearing, pertained to the issue of what constitutes a "secondary school" under the school zone statute. The prosecutor informed the judge that prior rulings concerning the definition of, and evidence pertaining to, "secondary school," had been "withdrawn," and that the parties were "starting from scratch." The prosecutor argued that the department's regulations should not be admitted in evidence, and that the judge should not read the regulations into the record or state them in his charge to the jury.[5] After denying the prosecutor's request to report the case to the Appeals Court, the judge allowed a continuance on the cases to enable both defendants to procure a witness from the department to testify "as to the regulations." The judge noted that this action would obviate the need for the Commonwealth to seek relief pursuant to G. L. c. 211, § 3, and that the Commonwealth would have "no standing to object to [the] continuance" allowed. The judge left the issues concerning the meaning of the term "secondary school," as well as other pretrial motions, for the trial judge. Trial was rescheduled.

The Commonwealth next sought, in the county court, a

[4]Bell, operating on the assumption that the motion in limine had been allowed, asked the judge to "reconsider [his] earlier decision" to exclude the definition of secondary school contained in the department's regulations when instructing the jury on the elements of the school zone charge. He argued that the department's definition and regulations "should take precedence over common law and dictionary definitions." He submitted evidence to show that ABCD University High School did not satisfy the department's regulations.

[5]The transcript belies the defendants' contention that the only issue before the judge was whether they could refer to the department's regulations in their opening statements.

supervisory order to stay the trial to enable it to pursue its petition for relief under G. L. c. 211, § 3. A single justice entered a stay, and the Commonwealth filed its petition. The single justice then made his reservation and report.

1. The defendants argue that we should not exercise our power under G. L. c. 211, § 3, to review the matter because (1) there is no actual ruling or order to review; (2) evidentiary rulings ordinarily are not subject to review under G. L. c. 211, § 3; and (3) we have never granted relief to the Commonwealth from a *prospective* evidentiary ruling. Each of these arguments is technically correct. See *Commonwealth* v. *Yelle,* 390 Mass. 678, 687 (1984). We conclude, nonetheless, that it is appropriate to exercise our general superintendence power under G. L. c. 211, § 3.

We arrive at this conclusion for several reasons. First, the issue raised by the Commonwealth's petition is not solely evidentiary. Rather, the petition presents the question how the trial judge should instruct the jury on an essential element of the offense. See *Commonwealth* v. *Gonzales,* 33 Mass. App. Ct. 728, 730 (1992) ("in a prosecution pursuant to G. L. c. 94C, § 32J, the Commonwealth is required to produce sufficient evidence to establish that the school is one of the types enumerated in the statute"). See also *Commonwealth* v. *Ellerbe,* 430 Mass. 769, 772 (2000), and cases cited. This issue cannot be avoided and, without immediate intervention, will arise soon again in these cases (and in others). The defendant Bell acknowledges as much in a pretrial memorandum. Additionally, the judge refused to report the case to the Appeals Court, and fashioned his ruling allowing a continuance, to prevent the Commonwealth from seeking relief pursuant to G. L. c. 211, § 3. The Commonwealth has shown that it has no other means of effective appellate review. The appeal thus represents one of those most exceptional occasions appropriate for us to act under G. L. c. 211, § 3, "to correct and prevent errors and abuses." See *Commonwealth* v. *Yelle, supra.* See also *Commonwealth* v. *Gonzalez,* 437 Mass. 276, 281 n.2 (2002), cert. denied, 538 U.S. 962 (2003).

2. As had been said, in a prosecution under the school zone statute, the Commonwealth must prove that the school is one of

the types enumerated in the statute. See *Commonwealth* v. *Ellerbe, supra.* The school zone statute provides:

> "Any person who violates [G. L. c. 94C, § 32A] *while in or on, or within one thousand feet of the real property comprising a* public or private accredited preschool, accredited headstart facility, elementary, vocational, or *secondary school* whether or not in session, or within one hundred feet of a public park or playground shall be punished by a term of imprisonment in the [S]tate prison for not less than two and one-half nor more than fifteen years or by imprisonment in a jail or house of correction for not less than two nor more than two and one-half years. No sentence imposed under the provisions of this section shall be for less than a mandatory minimum term of imprisonment of two years. A fine of not less than one thousand nor more than ten thousand dollars may be imposed but not in lieu of the mandatory minimum two year term of imprisonment as established herein. In accordance with the provisions of [G. L. c. 279, § 8A] such sentence shall begin from and after the expiration of the sentence for violation of [G. L. c. 94C, § 32A].
>
> "Lack of knowledge of school boundaries shall not be a defense to any person who violates the provisions of this section." (Emphasis added.)

G. L. c. 94C, § 32J. The statute does not define the term "secondary school." Because the defendants sought to have the judge instruct the jury on the definition of a "secondary school" using only the department's regulations, to the exclusion of other definitions, the issue requires that we ascertain the legal definition of the term "secondary school." The Commonwealth has not argued that the defendants cannot challenge the Commonwealth's proof that the school was included in the school zone statute. That the prosecutor may have stipulated to the admissibility of certain evidence is not in any sense a waiver of the Commonwealth's argument that the department's regulations concerning secondary schools cannot serve as the sole legal definition of a secondary school under the school zone statute. The stipulations, even if made (what is apparent from the record is that certain stipulations were made as to authentic-

ity of certain documents, not as to admissibility), are immaterial to the issues before us.

We reject the defendants' argument that the department's regulations are controlling as to the definition of the term "secondary school" that will be provided to the jury. "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). "We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Id.* Dictionary definitions of the term "secondary school" are not vague and include "a school more advanced in grade than an elementary school and offering general, technical, vocational, or college-preparatory courses," Webster's Third New Int'l Dictionary 2051 (1993); "a school intermediate between elementary school and college and usu-[ally] offering general, technical, vocational, or college-preparatory courses," Webster's Ninth New Collegiate Dictionary 1060 (1989); "[a] school that is intermediate in level between elementary school and college and that usually offers general, technical, vocational, or college-preparatory curricula," The American Heritage Dictionary 1630 (3d ed. 1996).

While we may look to definitions of the term "secondary school" used in other legal contexts, see *Commonwealth* v. *Zone Book, Inc.*, *supra*, doing so in this case, by resorting solely to the department's regulations, would be inconsistent with the purpose of the school zone statute. In contrast to the dictionary definitions quoted above, the department's regulations concerning what constitutes a "secondary school" are restrictive and, by reason of their accreditation requirement (by the school committee), would exclude ABCD University High School as a qualifying school under the school zone statute. See 603 Code Mass. Regs. § 33.03. This would, in effect, add a qualification to the term "secondary school" that is not in the statute itself. Such an exclusion would also clearly negate the intent of the Legislature to provide drug-free school zones, see *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 651 n.7 (1992) (Governor Michael S. Dukakis "indicated that he was propos-

ing the legislation that ultimately became G. L. c. 94C, § 32J,
in order to 'establish a 1,000 feet drug-free school zone . . . .
[in order to make] every school and surrounding community
safe from the destructive impact of drug trafficking and drug
abuse' "). The broad purpose of the school zone statute, which
is expressed in the statute's language and legislative history, as
well as in decisional law, should not be unnecessarily limited.
By its terms, the school zone statute applies to schools whether
"public or private," "whether or not [the school is] in session,"
and whether the drug dealer has knowledge of the school
boundaries, see G. L. c. 94C, § 32J; *Commonwealth* v. *Alvarez*,
413 Mass. 224, 229 (1992). Moreover, since the enactment of
the school zone statute, see St. 1989, c. 227, § 2, the Legislature
has expanded the zone of safety to include other places where
children would likely be present, see St. 1993, c. 335 (expand-
ing the zone of safety to "within one hundred feet of a public
park or playground") and St. 1998, c. 194, § 146 (expanding
protection to an "accredited preschool [and] accredited head-
start facility").[6] Decisional law has determined that it matters
not whether the drug dealer has knowledge of the location and
existence of a qualifying school, see *Commonwealth* v. *Klus-
man*, 46 Mass. App. Ct. 919, 920 (1999), quoting *Bailey* v.
*State*, 603 N.E.2d 1376, 1380 (Ind. Ct. App. 1992) ("Although
some schools are not clearly recognizable as such from all
points within the 1000 foot radius, the dealers bear the burden
of ascertaining where schools are located and removing their
operations from those areas or face enhanced penalties"). As
correctly noted in *Commonwealth* v. *Klusman*, *supra*, quoting
*State* v. *Baez*, 238 N.J. Super. 93, 97 (1990), a violation of the
school zone statute "has nothing to do with the nature of the
school[]."

    The department's regulations are irrelevant. The fact that a
particular educational facility might not be in technical compli-

---

[6]The fact that the Legislature was aware that various schools "were tightly
regulated [by] the [department] and by [F]ederal and [S]tate statute[s]" is no
indication that the Legislature intended that the department's regulations
should be applied to the school zone statute. General Laws c. 94C, § 32J,
punishes the sale of drugs near a school and has nothing to do with other
statutes and regulations enacted to "provide a public education system of suf-
ficient quality to extend to all children," G. L. c. 69, § 1.

ance with all of the educational requirements imposed on an accredited "secondary school" does not mean that the facility is not a "secondary school," nor would that technical noncompliance make it any less compelling that drug dealers be kept away from that facility's students. At trial, the judge should not admit the department's regulations in evidence, permit expert testimony about them, or use the regulations to define "secondary school" in the charge to the jury. The jury charge should employ one or more of the dictionary definitions quoted above and advise the jury that they would be warranted in finding ABCD University High School a "secondary school" under the statute.

3. The Commonwealth's petition inappropriately seeks relief in all school zone cases pending in the Boston Municipal Court. We confine our decision to the defendants' cases (if tried separately or together). As so limited, the Commonwealth's petition for relief under G. L. c. 211, § 3, is allowed with the direction that the trial judge should not admit the department's regulations in evidence and should not allow any expert to testify as to the meaning of the department's regulations. The judgment shall also provide that a trial judge may not use the department's regulations to fashion a definition of "secondary school" in the charge to the jury, but rather should instruct the jury as indicated above. The stay entered by the single justice is vacated, and the case is remanded for entry of an appropriate judgment.

*So ordered.*