## COMMONWEALTH *vs.* JAMES FREEMAN, THIRD.

Worcester. September 10, 2004. - November 15, 2004.

Present: MARSHALL, C.J., IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Homicide. Joint Enterprise. Evidence,* Joint enterprise. *Witness,* Self-incrimination. *Jury and Jurors. Practice, Criminal,* Capital case, Argument by prosecutor, Jury and jurors, New trial, Assistance of counsel.

The evidence at a criminal trial was sufficient to convict the defendant of murder in the first degree on a theory of deliberate premeditation as both a principal and as a joint venturer, where the defendant planned the robbery at issue with others, helped arm two coventurers with guns, brought a loaded gun to the victims' apartment, held the victims at gunpoint while the others searched for drugs and money, gave directions to others at the scene as to where to search, was in the kitchen with a coventurer when the coventurer shot the victims, and fled the scene with the coventurer and hid the murder weapon. [782-784]

The judge at a criminal trial did not err in allowing a prospective witness to invoke his right against self-incrimination under the Fifth Amendment to the United States Constitution, where the risk that the witness's proffered testimony would tend to incriminate him was neither imaginary, remote, nor speculative; moreover, given that the witness's proffered testimony dealt solely with his conversations with the defendant's coventurer, the judge did not err in allowing the witness to assert his right not to testify in a "blanket" fashion rather than on a question-by-question basis. [784-786]

There was no merit to the argument that the prosecutor, in his closing argument at a criminal trial, improperly vouched for two witnesses, and no substantial likelihood of a miscarriage of justice arose in any of the prosecutor's other comments during closing argument, particularly in light of the judge's instructions to the jury that it was their job to decide the case solely on the evidence and that arguments of counsel were not evidence. [786-787]

The judge at a criminal trial did not err in excusing a juror before the jury began their second day of deliberation, where the record adequately supported the judge's finding that the juror was distraught and unable to continue with deliberations due to reasons personal to the juror, and where there was nothing in the record to indicate that the jury were at an impasse, and thus, there was no danger that a dissenting juror was allowed to evade her responsibilities. [787-789]

The judge hearing a motion for a new trial of indictments charging, inter alia, murder in the first degree properly denied the motion without a hearing, where there was no error arising from the Commonwealth's alleged failure to reveal a plea agreement with a coventurer, in that the record indicated

that the plea agreement was not finalized until after the coventurer had testified in the defendant's trial [789-790]; and where trial counsel was not unprepared for trial and did not err in deciding not to call certain witnesses at trial [790-792].

INDICTMENTS found and returned in the Superior Court Department on June 8, 1998.

The case was tried before *Nonnie S. Burnes,* J., and a motion for a new trial, filed on June 12, 2002, was considered by her.

*Charles K. Stephenson* for the defendant.

*Anne S. Kennedy,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. A Superior Court jury convicted the defendant, James Freeman, III, of murder in the first degree on theories of deliberate premeditation and felony-murder.[1] His appeal, originally entered in this court in February, 2000, has been delayed by the defendant's change of counsel and by his filing in this court in 2002 a motion for a new trial, which we remanded to Superior Court, where it was denied. The defendant's direct appeal and the appeal from the denial of his motion for a new trial have been consolidated.

On appeal, the defendant claims that: (1) there was insufficient evidence of joint venture; (2) the jury instruction could have allowed the jury to convict him without proof of an independent felony; (3) the trial judge erred in allowing a prospective witness to invoke his right against self-incrimination under the Fifth Amendment to the United States Constitution; (4) the prosecutor's improper statements in closing argument require reversal; (5) the judge's dismissal of a juror for personal reasons was error; and (6) the judge's denial of the defendant's motion for a new trial without an evidentiary hearing was improper. The defendant also requests that this court use its extraordinary power under G. L. c. 278, § 33E, to reduce the

---

[1]The defendant was also convicted of armed assault with intent to murder, G. L. c. 265, § 18(*b*); home invasion, G. L. c. 265, § 18C; armed assault in a dwelling, G. L. c. 265, § 18A; assault and battery with a dangerous weapon, G. L. c. 265, § 15A (*b*); and armed burglary, G. L. c. 266, § 14. The judge allowed the defendant's motion for a required finding of not guilty on a charge of armed robbery.

degree of guilt on his murder conviction or grant him a new
trial. Because we find no merit in the defendant's claims of er-
ror and conclude there is no basis to exercise our power under
G. L. c. 278, § 33E, we affirm the convictions and the denial of
his motion for new trial.

*Facts.*

We summarize the evidence in the light most favorable to the
Commonwealth. *Commonwealth* v. *Gilbert*, 423 Mass. 863, 864
(1996). On the evening of October 4, 1994, the female victim
was shot in the head and killed in the kitchen of her second-
floor apartment located at 17 Ward Street in Worcester. A man
who was also present in the apartment was shot in the left eye
area but survived. The shootings stemmed from the attempt of
the defendant and several others to break into the victims' apart-
ment to steal money and drugs.

On October 4, the defendant met up with several men, with
whom he discussed committing a robbery. At some point, the
defendant and some of the men smoked "some weeds." During
the discussions, the defendant asked Shawn Johnson if he
wanted to do a "stick up" and discussed the details of the
robbery. Two of the men went to get masks to use in the robbery.
The defendant and some of the men then went to the home of
the defendant's girl friend, where the defendant went inside and
returned with two guns, giving one to Carlos Wheeler and one
to Johnson. Before reaching 17 Ward Street, the men donned
their masks. At some point, the defendant took back one of the
guns. The men broke into the downstairs apartment by kicking
in the front door. After searching the downstairs apartment and
finding nothing, the men went to the second-floor apartment.
The defendant held both victims at gunpoint in the kitchen
while telling the others what to do and where to search. It is not
clear whether the men took anything from the apartment.

There is conflicting testimony as to who actually shot the
victims. Wheeler testified that the defendant shot both victims.[2]
Another witness testified that the defendant stated that he "shot
two bitch ass Dominicans in the head" during the Ward Street

---

[2]Shawn Johnson testified about the defendant's involvement in the robbery
up until the actual shootings. Johnson claimed he left the apartment before the
shootings.

incident. However, one other witness, Shawn Johnson, testified that Wheeler admitted to being the shooter. After the victims were shot, defendant and Wheeler fled from the apartment, and defendant later hid the gun.

*Discussion.*

1. *Sufficiency of the evidence of joint venture.* Although conceding that the evidence was sufficient to convict him of deliberately premeditated murder as a principal, the defendant argues that his convictions of this crime and armed assault with intent to kill should be vacated because the evidence was insufficient to convict him on a theory of joint venture[3] and the jury's verdicts did not specify under which theory the defendant was convicted. *Commonwealth* v. *Flynn,* 420 Mass. 810, 818 (1995), and cases cited. The defendant argues that if the jury determined that Wheeler was the shooter, they could not have reasonably found that the defendant shared his intent to kill. Because the defendant did not move for required findings of not guilty, we review whether submission of the indictments to the jury on a theory of joint venture liability gives rise to a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Netto,* 438 Mass. 686, 700 (2003). We conclude there was sufficient evidence to support the jury's verdicts.

"A joint venturer is 'one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime.' " *Commonwealth* v. *Daughtry,* 417 Mass. 136, 138 (1994), quoting *Commonwealth* v. *Soares,* 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). To convict a defendant of joint venture, the Commonwealth must produce evidence that the defendant was present at the scene of the crime, with the knowledge that another intends to commit a crime, and by agreement is willing and available to help the other if necessary. *Commonwealth* v. *Green,* 420 Mass. 771, 779 (1995), quoting *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988). "The jury may infer the requisite mental state [for a joint venturer] from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Reaves,* 434 Mass. 383, 392

---

[3]The defendant concedes the evidence was sufficient to warrant submission of the case on a joint venture theory of felony-murder.

(2001), quoting *Commonwealth* v. *Longo, supra.*[4] Where the crime underlying the joint venture is murder in the first degree on a theory of deliberate premeditation, "the Commonwealth must show that the defendant's decision to kill was the product of 'cool reflection.' " *Commonwealth* v. *Williams*, 422 Mass. 111, 122 (1996), quoting *Commonwealth* v. *Davis*, 403 Mass. 575, 582 (1988). "The use of a gun in a killing is sufficient generally to permit an inference of premeditation precisely because evidence that the defendant brought a gun with him to the scene of a planned crime is evidence of planning, which included preparation for using the gun . . . ." *Commonwealth* v. *Stewart*, 398 Mass. 535, 541 (1986).

Viewing the evidence in the light most favorable to the Commonwealth, the jury reasonably could have found that the defendant committed murder in the first degree on a theory of deliberate premeditation as a joint venturer when he: (1) planned the robbery with others, including Wheeler; (2) helped arm two coventurers, including Wheeler, with guns; (3) brought a loaded gun to the victims' apartment; (4) held the victims at gunpoint while the others searched for drugs and money; (5) gave directions to others at the scene as to where to search; (6) was in the kitchen with Wheeler when he shot the victims; and (7) fled the scene with Wheeler and hid the murder weapon. See *Commonwealth* v. *Watson*, 388 Mass. 536, 547-548 (1983), *S.C.*, 393 Mass. 297 (1984) (sufficient evidence for joint venture deliberately premeditated murder where defendant knew shooter had gun, defendant held victim while shooter went through victim's pockets, defendant released victim and shooter shot victim, and then defendant ran from scene with shooter).[5] Thus, we conclude that the evidence in this case was sufficient to

---

[4]"The jury's inferences 'need only be reasonable and possible and need not be necessary or inescapable.' " *Commonwealth* v. *Daughtry*, 417 Mass. 136, 140 (1994), quoting *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980).

[5]Contrast *Commonwealth* v. *Fickett*, 403 Mass. 194, 197-198 (1988) (evidence insufficient where defendant was mere onlooker and did not know coventurer had gun); *Commonwealth* v. *Mandile*, 403 Mass. 93, 101 (1988) (evidence insufficient where there was no hostility between defendant and victim, and murder occurred after shooter had been alone with victim for fifteen minutes); *Commonwealth* v. *Clark*, 363 Mass. 467, 473 (1973) (evidence insufficient where there was no showing defendant had prior knowledge of weapon or intent to use it).

warrant the defendant's conviction of deliberately premeditated murder in the first degree on a theory of joint venture. In view of this conclusion, and in the absence of any claim of error with respect to the jury instructions for deliberately premeditated murder, it is unnecessary for us to consider the alleged errors in the felony-murder instructions raised by the defendant. See *Commonwealth* v. *Pagan,* 440 Mass. 84, 92 (2003).

2. *Prospective witness's Fifth Amendment privilege.* At trial, the defendant attempted to call Edwin Calderon, who was expected to testify that while he and Wheeler were in jail together, Wheeler admitted that he, not the defendant, had shot the victims. After consulting with the attorney who represented him in pending unrelated cases, Calderon advised the judge he would invoke his privilege under the Fifth Amendment and refuse to answer any questions.

The judge conducted a voir dire and concluded, over the defendant's objection, that Calderon had a legitimate basis for invoking his Fifth Amendment privilege. The judge found that because both Calderon's counsel and the prosecutor agreed that his testimony could serve to incriminate him on charges including conspiracy to commit perjury, obstruction, and intimidation of a witness, it was not perfectly clear that he would not incriminate himself. The defendant argues that the judge's ruling unconstitutionally deprived him of his right to present a defense secured under art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution. We conclude there was no error.

Although both the Sixth Amendment and art. 12 guarantee a defendant's right to present a defense, including the right to call witnesses on behalf of the defense, this right is not absolute. *Commonwealth* v. *Dagenais,* 437 Mass. 832, 839 (2002). A witness's proper invocation of the Fifth Amendment privilege against self-incrimination is one limitation on a defendant's right to call a witness. *Id.,* quoting *Commonwealth* v. *Drumgold,* 423 Mass. 230, 247-248 (1996). We have long held that "a witness's decision not to testify on Fifth Amendment grounds must be honored unless it is ' "*perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have

such tendency" to incriminate' " (emphasis in original). *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 389 (1984), quoting *Hoffman* v. *United States*, 341 U.S. 479, 488 (1951). This privilege extends not only to answers that would in themselves support a conviction, but also to those that would furnish a link in the chain of evidence needed to prosecute the witness. *Commonwealth* v. *Dagenais, supra.*

Here, the risk that Calderon's proffered testimony would tend to incriminate him was neither "imaginary, remote [n]or speculative." *Commonwealth* v. *Martin*, 423 Mass. 496, 502 (1996), quoting *In re Morganroth*, 718 F. 2d 161, 167 (6th Cir. 1983). The exact nature of the relationship between Calderon and the defendant was unclear, *Commonwealth* v. *Tracey*, 416 Mass. 528, 538 (1993), and answering the questions posed by defense counsel could possibly have incriminated the witness because, as defense counsel conceded in oral argument, it is possible that the witness agreed to testify falsely on behalf of the defendant and thus possibly have conspired to commit perjury.[6] Therefore, it is not "perfectly clear" that Calderon's testimony would not incriminate him.

The defendant also argues that the judge committed prejudicial error by allowing Calderon to assert his right not to testify in a "blanket" fashion rather than on a question-by-question basis. However, the defendant's argument is without merit, as *Commonwealth* v. *Martin, supra,* requires only that "[t]he privilege must be asserted with respect to particular questions, and the possible incriminatory potential of each proposed question, *or area*" which may be explored must be considered (emphasis added). *Id.* In this case, the judge inquired about how the witness would respond to questions regarding his conversation with Wheeler and the witness indicated he would not respond. Thus, as his proffered testimony dealt solely with his conversations with Wheeler, the judge properly allowed the witness to assert a blanket privilege.

---

[6]The materials submitted in support of the motion for a new trial suggest an alternative way in which the testimony might incriminate Calderon, as Calderon described to an investigator how Wheeler planned to testify falsely against the defendant to get a deal, and how Wheeler encouraged Calderon to testify falsely against his codefendant.

However, even if it was error to permit Calderon to assert his Fifth Amendment right, we are persuaded that the error was harmless beyond a reasonable doubt. Had Calderon testified, "the Commonwealth's case against the defendant as joint venturer would have remained overwhelming." *Commonwealth* v. *Tague*, 434 Mass. 510, 517 (2001), cert. denied, 534 U.S. 1146 (2002).

3. *Prosecutor's closing argument.* The defendant challenges the propriety of four statements made by the prosecutor during his closing argument. Because defense counsel failed to object to the statements at trial, we limit our inquiry to whether they created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Beland*, 436 Mass. 273, 289 (2002). "Additionally, '[t]he fact that the defendant did not object, "[a]lthough not dispositive of the issue . . . is some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial.' " " *Id.*, quoting *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989). We analyze the prosecutor's remarks considering the argument as a whole, the judge's instructions to the jury, and the evidence produced at trial. *Commonwealth* v. *Beland, supra,* citing *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995). We conclude that, taken in the context in which they were argued, the prosecutor's statements were not improper and did not deprive the defendant of a fair trial.

The defendant's first argument, that the prosecutor improperly vouched for two witnesses (who, the defendant asserts, testified pursuant to agreements[7]) when he characterized them as showing "some courage," is without merit. The prosecutor was not speaking about coventurer witnesses who may have had agreements with the Commonwealth. He qualified the statement by saying "[p]articularly the ones that *didn't have any charges*

---

[7] In response to the defendant's pretrial discovery request as to any deals made between the Commonwealth and the witnesses, the prosecutor stated that no agreements had been finalized but that the Commonwealth would probably recommend three-year sentences if the witnesses testified truthfully. One witness testified that he had such a deal with the Commonwealth. The other witness denied having a deal, or even knowing about a potential deal with the Commonwealth in exchange for his testimony.

*against them.*" Additionally, the defendant argues that the prosecutor's statement, "we are very fortunate in this case . . . [to] have two people to testify . . . that were involved in the incident," implied that the witnesses appeared solely for the benefit of the jury and that the government received no benefit from the witnesses' testimony. There was no error. All witnesses appear to assist the jury in their fact-finding function. Next, the prosecutor's comment that the jury could find either "that Wheeler [was] the shooter" or "that the Commonwealth [was] correct that" Freeman was the shooter did not imply, as the defendant argues, that the prosecutor knew something that the jury did not. The conflicting testimony supported his statement. Finally, the prosecutor's statement, "Can't you see [the defendant] as the intimidator?," contrary to the defendant's argument, made no reference to the defendant's court room demeanor. This comment merely refers to evidence that the defendant bragged to one of the witnesses about how tough he was with a gun and how he shot the victims.[8]

Additionally, the judge's instruction properly directed the jury that it was their job to decide the case solely on the evidence and that the arguments of counsel were not evidence. She also instructed the jury to determine the facts "without any bias or prejudice or sympathy for or against either party." Moreover, the Commonwealth produced a strong case that included the testimony of two coventurers who both said the defendant was there and had orchestrated the crime. Accordingly, there was no substantial likelihood of a miscarriage of justice.

4. *Discharge of a deliberating juror.* Just before the jury began their second day of deliberation, a juror arrived "quite late" and was "very upset." The judge conducted a lobby conference with the juror in the presence of the defendant, defense counsel, and the prosecutor, questioning the juror to determine the juror's ability to continue deliberating. Based on

---

[8]The prosecutor was summarizing the testimony of Michael Rinaldo, who stated that defendant had said he liked .22 caliber handguns, possibly for "an intimidation" factor.

her exchange with the juror, the judge excused the juror.[9] After the juror left, defense counsel objected to her dismissal.[10]

The defendant contends that the judge committed "prejudicial constitutional error" when she dismissed a deliberating juror because she failed to conduct a hearing sufficient to satisfy the procedural requirements set forth in *Commonwealth* v. *Connor*, 392 Mass. 838, 843-844 (1984). The defendant argues that, because the judge questioned the juror but did not seek trial counsel's input, the judge did not hear from "all other personnel with relevant information" prior to excusing the juror. *Commonwealth* v. *Haywood*, 377 Mass. 755, 770 (1979). Additionally, the defendant argues that the judge's statement that she was unsure if the juror was distraught because of the case or because of her own personal situation shows that the juror was not appropriately excused.

General Laws c. 234, § 26B, provides in pertinent part that if, at any time after the case has been submitted to the jury but before the jury have agreed on a verdict, a juror "dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court," the judge may discharge the juror and substitute an alternate juror, ordering the jury to renew their deliberations. *Commonwealth* v. *Francis*, 432 Mass. 353, 367 (2000). See Mass. R. Crim. P. 20 (d), 378 Mass. 889 (1979).

[9]After arriving in the lobby, the juror immediately began apologizing and explaining her tardiness. Despite the judge's repeated attempts to accept the juror's apology and to ask if the juror could continue with deliberations, the juror continued apologizing in a lengthy, incoherent manner, making numerous references to her spouse's neurological disorder and interrupting the judge. The juror also told the judge she was "very astute" in her observation that the juror could not continue to deliberate based on what happened that morning.

[10]The judge replied: "This woman was distraught, her hair was rambled, she was crying, she was red in the face. She could hardly make sense. She kept repeating herself. It was difficult to get her to stop talking so I could speak with her. She was enormously upset. I don't know whether she was enormously upset because of this case or she was enormously upset because of her own personal situation. But she kept talking about her difficulties with her husband who was ill. That she was very stressed because of that. And it was quite plain to me, that she was not calming down and that she was not going to be able to focus on the evidence in this case, and give what the public and the defendant are entitled to here, which is a fair and impartial and reasoned evaluation of the evidence. So I have excused her. And those are the reasons."

"Before replacing a deliberating juror, 'the judge should hold a hearing and be fully satisfied that there is a meritorious reason why a particular juror should not continue to serve. . . . The judge then should consider whether, in view of all the circumstances, an alternate juror should be substituted.' " *Commonwealth* v. *Leftwich*, 430 Mass. 865, 873 (2000), quoting *Commonwealth* v. *Haywood, supra* at 769-770. A trial judge has "discretion to determine that the facts show an inability to perform the functions of a juror, [but] that inability must be supported by facts in the record." *Commonwealth* v. *Leftwich, supra*, and cases cited. "Where the judge's finding is not clearly erroneous, it warrants our deference." *Commonwealth* v. *Swafford*, 441 Mass. 329, 337 (2004), and cases cited.

We are satisfied that the record adequately supports the judge's finding that the juror was distraught and unable to continue with deliberations due to reasons personal to the juror. Moreover, there is nothing in the record to indicate that the jury were at an impasse, thus, "there was no danger that a dissenting juror was allowed to evade her responsibilities." *Commonwealth* v. *Garrey*, 436 Mass. 422, 431 (2002). There was no error.

5. *Denial of motion for a new trial.* The defendant filed a motion for a new trial based on allowing a prospective witness to exercise his Fifth Amendment privilege against self-incrimination (discussed *supra*), newly discovered evidence that the prosecutor failed to disclose witness plea agreements, and ineffective assistance of counsel. The motion was denied without a hearing by the trial judge, who concluded that there was no substantial risk of a miscarriage of justice that would warrant an evidentiary hearing or a new trial.

a. *Newly discovered evidence.*[11] The claimed newly discovered evidence concerns the fact that the prosecutor did not pursue Wheeler's case until after the defendant was prosecuted and Wheeler ultimately received a sentence of from three to five years. The defendant argues this is substantial evidence that the

---

[11]In order for evidence to be deemed newly discovered, it must "have been unknown to the defendant or his counsel and not reasonably discoverable by them at the time of trial." *Commonwealth* v. *Grace*, 397 Mass. 303, 306 (1986). The defendant concedes that certain of the evidence submitted in support of the motion for a new trial may also have been available to trial counsel, but argues that this supports his ineffective assistance claim.

Commonwealth reached definitive pretrial agreement with Wheeler. "The failure of the Commonwealth to provide exculpatory evidence to a defendant may be a denial of due process and may require a new trial . . . [but the Commonwealth] is only required to provide exculpatory evidence in its possession." (Citations omitted.) *Commonwealth* v. *Daughtry*, 417 Mass. 136, 143 (1994).

A review of the record indicates that a plea agreement with Wheeler was not finalized until after he testified in the defendant's trial. Prior to the defendant's trial, the Commonwealth sent a letter to defense counsel stating that "the Commonwealth will probably recommend after the defendants have testified truthfully in Court, sentences of approximately three years on and after any sentence now being served. This agreement has not been finalized at this time." Moreover, defense counsel extensively cross-examined Wheeler and argued to the jury his lack of credibility, making it clear that Wheeler expected to receive some benefit for his testimony. The defendant concedes that he has not conclusively demonstrated that Wheeler was lying when he denied having "a deal."

The defendant cannot claim error in the Commonwealth's failure to disclose something which was not yet finalized. There is nothing in the record that indicates the Commonwealth suppressed any exculpatory evidence or engaged in wrongdoing. Accordingly, we conclude that there was no error.

b. *Ineffective assistance of counsel.* The defendant alleges that trial counsel failed to: prepare for trial adequately; locate and call a witness, who would have contradicted Shawn Johnson's testimony that he did not have a gun; and disclose to the defendant the existence of another witness, who had given a lengthy statement contradicting Wheeler's testimony.[12,13] Because this is a capital case, we review these allegations under

---

[12]The defendant's argument based on failure to exploit evidence of a finalized plea agreement was raised for the first time in this appeal. As discussed *supra*, there was no evidence of a finalized plea agreement.

[13]Although not argued in the appeal, the defendant's affidavit raises two other grounds for ineffective assistance of counsel that are also without merit. He claims trial counsel did not allow him to testify, but the transcript indicates that the judge advised him that it was his decision whether to testify and the defendant stated it was his decision not to testify. Additionally, the defendant

the substantial likelihood of a miscarriage of justice standard, as it is more favorable to the defendant. *Commonwealth* v. *Knight*, 437 Mass. 487, 499 (2002), quoting *Commonwealth* v. *Graham*, 431 Mass. 282, 289, cert. denied, 531 U.S. 1020 (2000). Therefore, in reviewing each claim of ineffectiveness of counsel, we must consider whether there was an error in the course of trial, and if so, whether such error was likely to have influenced the jury's conclusion. *Commonwealth* v. *Knight, supra.*

We first consider whether defense counsel was adequately prepared for trial. In support of his claims that counsel preparation was late and inadequate, the defendant states that defense counsel undertook no preparation for trial until over six months after his arraignment, only consulted with the defendant a few times late in pretrial preparation, and failed to prepare for cross-examination of prosecutorial witnesses except on an ad hoc basis. After reviewing the record and the defendant's affidavits, we agree with the judge that defense counsel was adequately prepared, knowledgeable and effective, and that the defendant was not harmed. Accordingly we find no error.

We next consider whether defense counsel was ineffective in failing to locate or call Jose Morales as a witness at trial. Morales's statement that he saw a person leaving the 17 Ward Street apartment who put a gun in his pocket was cumulative of the testimony of Brian Brown, a witness called by the prosecution. *Commonwealth* v. *Britto*, 433 Mass. 596, 602-603 (2001) (decision not to call additional witnesses regarding issue of identification not error because testimony cumulative). Moreover, Brown's testimony was more helpful to the defense in that it provided a physical description of the person leaving the apartment that did not match the defendant. Thus, we conclude that the decision not to call Morales as a witness was not error.

Finally, we consider the defendant's claim that defense counsel failed to disclose to the defendant the existence of, or call as a witness, one Michael Johnson. This witness purport-

claims trial counsel refused to call a witness, Shamiko Chouinard, who had agreed to testify on defendant's behalf. The nature of Chouinard's testimony is not clear from the record or from the defendant's affidavit, and thus the defendant has not shown that he was harmed by this decision.

edly would have provided evidence contradicting Wheeler. Such testimony would have been cumulative of Shawn Johnson's testimony that Wheeler admitted to being the shooter. See *Commonwealth* v. *Britto, supra.* Moreover, the information does nothing to exonerate the defendant, as it still implicates him as a joint venturer. Accordingly, we conclude that the decision not to call Michael Johnson was not error.[14]

6. *Review under G. L. c. 278, § 33E.* The defendant requests that we reduce his conviction of murder or order a new trial under G. L. c. 278, § 33E, in consideration of a number of factors (e.g., evidence that defendant was under the influence of drugs during the incident; coventurers prosecuted with indifference). We have reviewed the entire record and conclude that there is no reason to exercise our power under G. L. c. 278, § 33E.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*

---

[14]The defendant also claims that his motion should not have been denied without an evidentiary hearing. A judge has discretion to "decide a motion for a new trial without an evidentiary hearing where 'no substantial issue is raised by the motion or affidavits.' " *Commonwealth* v. *Martinez,* 437 Mass. 84, 98 (2002), quoting Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979). To determine whether a hearing is warranted we look to the adequacy of the defendant's showing on the issues raised, as well as to the seriousness of the issues asserted. *Commonwealth* v. *Martinez, supra,* quoting *Commonwealth* v. *Stewart,* 383 Mass. 253, 257 (1981). "A judge is not required to accept as true the allegations in a defendant's affidavit, even if nothing in the record directly disputes them." *Commonwealth* v. *Rzepphiewski,* 431 Mass. 48, 55 (2000), and cases cited. Moreover, the motion judge had presided over the defendant's trial, and she was in a superior position to assess the credibility of the defendant's claims that the prosecutor had failed to disclose plea agreements with witnesses and that defense counsel had been ineffective. *Id.* at 55-56, and cases cited. Because we conclude there was no error and the defendant failed to raise substantial issues in his motion for a new trial, it follows that it was not error for the judge to deny an evidentiary hearing.