# Commonwealth *vs.* Marcus Pixley.

No. 07-P-1976.

Suffolk. May 17, 2010. - September 9, 2010.

Present: Cypher, Meade, & Milkey, JJ.

*Constitutional Law,* Self-incrimination, Confrontation of witnesses. *Witness,* Privilege, Self-incrimination. *Controlled Substances. Evidence,* Certificate of drug analysis. *Words,* "Secondary school."

There was no merit to a criminal defendant's argument that he was prejudiced by a trial court judge's failure to conduct a particularized inquiry in open court to determine the validity of a defense witness's claim of privilege, or that such an inquiry should have been done on a question-by-question basis, where the information obtained in the judge's limited inquiry in open court was sufficient to demonstrate that the witness had a valid claim of privilege, and where the judge, in a subsequent in camera hearing, properly ascertained the areas to which the witness was refusing to testify. [626-630]

At the trial of indictments charging distribution of cocaine within a school zone, in violation of G. L. c. 94C, § 32J, the evidence was more than sufficient to establish that the institution in question was a secondary school within the meaning of the statute. [630-632]

At the trial of indictments charging, inter alia, distribution of cocaine, no substantial risk of a miscarriage of justice arose from the admission in evidence of testimony regarding money used by undercover police to purchase the cocaine from the defendant, where a photocopy of the bills used by police was entered in evidence, and where, at any rate, the defendant failed to meet his threshold burden of showing a reasonable possibility that the actual bills would have helped his case. [632]

At a criminal trial, the admission in evidence of a certificate of drug analysis without testimony from the analyst who performed the tests, in violation of the defendant's constitutional right of confrontation, was not harmless beyond a reasonable doubt, where no facts independent of the certificate overwhelmingly proved the nature of the substances sold by the defendant to undercover police. [632-633]

Indictments found and returned in the Superior Court Department on April 26, 2005.

The cases were tried before *Elizabeth M. Fahey,* J.

*Jane E. Ross* for the defendant.

*Andrew R. Thomson* (*Joseph M. Ditkoff*, Assistant District Attorney, with him) for the Commonwealth.

MEADE, J. A jury convicted the defendant of distribution of cocaine in violation of G. L. c. 94C, § 32A(*c*), and of doing so in a school zone in violation of G. L. c. 94C, § 32J. In a separate bench trial, the defendant was also convicted of being a habitual criminal in violation of G. L. c. 279, § 25, and of second offense distribution in violation of G. L. c. 94C, § 32A(*d*).[1]

On appeal, the defendant claims that (1) the judge erred in holding an in camera hearing to determine the validity of a defense witness's claim of privilege under the Fifth Amendment to the United States Constitution, (2) the evidence was insufficient to establish that University High School (UHS) was a secondary school, (3) testimony regarding money used to purchase narcotics should have been excluded because the money itself was not in evidence, (4) the admission of the certificate of drug analysis without testimony from the analyst violated his rights under the Sixth Amendment to the United States Constitution, and (5) that the judge erred in failing to properly instruct the jury on the school zone charge. We reverse.

1. *Background.* From the evidence at trial, the jury were entitled to find the following. On March 2, 2005, Everett police Officer Richard Connor and Middlesex County Deputy Sheriff Meaghan Leary, both working undercover, entered a McDonald's restaurant in Boston. The defendant and Dwayne Gillum also entered the restaurant, and Gillum told the undercover officers to sit down at a small table. Moments later, the defendant sat down at a table behind them. Connor told the defendant that he had forty dollars, and the defendant responded, "My boy will hook you up." The defendant walked over to Gillum, and both men returned together and sat down. The defendant said, "Give me the money." Connor gave two twenty dollar bills (with pre-recorded serial numbers) to the defendant, who handed them to Gillum. Gillum in turn gave a plastic bag to the defendant, who handed it to Connor. The defendant and Gillum left the restaurant in different directions and were arrested by Boston police

---

[1]The defendant's conviction of conspiracy to violate the drug laws, in violation of G. L. c. 94C, § 40, was filed.

officers shortly thereafter. In his right hand, Gillum still held the forty dollars given to him by Connor. The plastic bag contained two pieces of "crack" cocaine. Connor and Leary identified both the defendant and Gillum at the time of their arrests. The drug transaction was also recorded by the McDonald's security cameras, and the recording was later played for the jury.

Gillum pleaded guilty to two charges of distribution of cocaine, distribution in a school zone, and conspiracy. The defendant summonsed Gillum to testify as a defense witness during the defendant's jury trial on the drug distribution and school zone charges. The defendant anticipated that Gillum would offer testimony that would contradict the Commonwealth's version of what transpired at the McDonald's restaurant. Gillum was appointed counsel, who informed the judge that Gillum would invoke his privilege against self-incrimination. The judge held an in camera hearing at Gillum's counsel's request and determined that Gillum had a valid Fifth Amendment privilege.

2. *Fifth Amendment issue.* The defendant claims the judge erred in holding a hearing in camera to determine the validity of Gillum's Fifth Amendment privilege claim. Instead, he argues that the judge should have conducted a particularized inquiry in open court to determine the validity of Gillum's claim of privilege and that such an inquiry should have been done on a question-by-question basis.

The Fifth Amendment's privilege against compulsory self-incrimination provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. 5. See *Kastigar* v. *United States*, 406 U.S. 441, 444-445 (1972); Mass. G. Evid. § 511(b) (2010). Where a witness is called to testify but invokes the privilege against self-incrimination, the witness will not be forced to testify unless it is " '*perfectly clear*, from a careful consideration of all the circumstances in the case, . . . that the answer[s] *cannot possibly* have such tendency' to incriminate (emphasis in original)." *Commonwealth* v. *Martin*, 423 Mass. 496, 502 (1996), quoting from *Commonwealth* v. *Funches*, 379 Mass. 283, 289 (1979). The "privilege extends not only to [a witness's] answers that would in themselves support a conviction, but also to those that would

furnish a link in the chain of evidence needed to prosecute the witness." *Commonwealth* v. *Freeman*, 442 Mass. 779, 785 (2004).[2]

When a witness, directly or through counsel, informs the judge that he would exercise his Fifth Amendment privilege against self-incrimination, the judge is required to "make an informed determination whether the witness has established a real risk that his testimony could possibly tend to incriminate him." *Pixley* v. *Commonwealth*, 453 Mass. 827, 832 (2009). Usually, this can be accomplished by the disclosure of information to the judge in open court. See *Commonwealth* v. *Martin*, 423 Mass. at 504. In exceptional circumstances, the information made available to the judge in open court will not be adequate to permit the judge to assess the validity of the asserted privilege. When this is the case, the judge may conduct an in camera hearing with the witness and the witness's counsel at which the witness will be required to disclose enough additional information to permit the judge to make the determination. *Commonwealth* v. *Martin, supra. Pixley* v. *Commonwealth, supra* at 833; Mass. G. Evid. § 511(b).

Here, through his counsel, Gillum informed the judge that he would exercise his Fifth Amendment privilege. With this notice, the judge made a limited inquiry of the prosecutor as to what crimes Gillum had been convicted of for his role in the incident at the McDonald's restaurant on March 2. The prosecutor informed the judge of the various crimes to which Gillum had pleaded guilty, and noted that an indictment which alleged a school zone violation had been dismissed. When the judge began to inquire as to which charges Gillum could still be placed in jeopardy, and could therefore claim a Fifth Amendment privilege, Gillum's counsel requested that further inquiry be conducted in camera. The judge agreed and conducted a *Martin* hearing. The defendant claims, in essence, that the judge jumped the gun by conducting an in camera inquiry without first attempting to gather more information in open court to permit her to

[2] A witness cannot "make a blanket assertion of the privilege," but rather, he must show a "real risk that his answers to questions will tend to indicate his involvement in illegal activity." *Commonwealth* v. *Martin, supra* at 502. That risk is assessed by the judge, and the privilege must be asserted with respect to particular questions, or areas which the prosecution might wish to explore. *Ibid.*

make the "informed decision" about the claim of privilege. Even if this is true, based on our review of the transcript and what was later revealed in open court, as we explain below, we fail to see how the defendant suffered any prejudice.

Having reviewed the transcript of the in camera hearing,[3] we conclude that the hearing itself was properly conducted and that the witness had a valid claim of privilege. In considering whether the privilege against self-incrimination is validly asserted, the judge must consider " 'the possible incriminatory potential of each proposed question, *or area*' which may be explored (emphasis in original)." *Commonwealth* v. *Freeman*, 442 Mass. at 785, quoting from *Commonwealth* v. *Martin*, 423 Mass. at 502. In the course of the in camera hearing, two different areas of Gillum's potential criminal exposure were explored. One was accepted as a real risk and the other rejected. The judge further explored the possibility of permitting a question-by-question inquiry of Gillum, but concluded that the Commonwealth's cross-examination was where the danger for Gillum existed. The judge properly was concerned about the real possibility of having to strike Gillum's direct testimony if Gillum exercised the privilege on cross-examination, and having to declare a mistrial. Given these concerns and the undisclosed information we have reviewed, it was not an abuse of discretion for the judge to conclude that Gillum had a valid claim to the privilege.

After the in camera hearing, the judge announced that Gillum had a valid claim to the privilege. She further explained that she explored the possibility of conducting a question-by-question inquiry in order to provide the jury with some of his testimony. In the end, the judge determined that such an inquiry would not insulate Gillum from answering incriminating questions on cross-examination, and that an invocation of the privilege on

---

[3] Prior to his direct appeal in this court, the defendant petitioned a single justice of the Supreme Judicial Court for Suffolk County, pursuant to G. L. c. 211, § 3, to permit him access to the transcript of the in camera *Martin* hearing, and to refer to its contents in his appellate brief before this court. See *Commonwealth* v. *Martin*, 423 Mass. at 504-505. The single justice denied the petition. On appeal, the Supreme Judicial Court affirmed the denial of the petition and held that "neither the defendant nor defense counsel is entitled to disclosure of the impounded transcript; only the Justices of the Appeals Court may examine its contents, if necessary, to decide the merits of the defendant's appeal." *Pixley* v. *Commonwealth*, 453 Mass. at 828.

cross-examination would require that his direct testimony be struck and perhaps result in a mistrial. Despite this, the defendant claims that it was abuse of discretion for the judge not to conduct the question-by-question inquiry. We disagree.

The Supreme Judicial Court has clarified that a *Martin* hearing need not be conducted on a question-by-question basis. Rather, particularized questioning is only one manner to evaluate the assertion of the privilege; it may also be evaluated with respect to an "area" of questioning to be explored. *Commonwealth v. Freeman*, 442 Mass. at 785. A question-by-question inquiry was not necessary in the instant case because, as in *Freeman*, the judge properly ascertained the areas to which Gillum was refusing to testify. Had the judge allowed Gillum to refuse to answer the prosecutor's questions, his testimony would have been struck, and a mistrial risked.

Turning to what was revealed in open court, which is where the defendant claims the inquiry should have taken place in the first instance, we determine that the information obtained was also sufficient to demonstrate that Gillum had a valid claim to the privilege against self-incrimination. The prosecutor informed the judge that, should Gillum testify, he intended to explore on cross-examination Gillum's history of drug dealing, how he has used other people to distance himself from the drug transactions, and how he has used the defendant on March 2, and other occasions, for that same purpose. The judge correctly noted that Gillum "would have a Fifth Amendment privilege with respect to those kinds of questions." Indeed, it was not "perfectly clear" from the intended line of cross-examination, which included an inquiry regarding his past participation in uncharged crimes, that Gillum was mistaken as to his potential to incriminate himself by answering the questions. See *Commonwealth v. Martin*, 423 Mass. at 502. At the very least, his responses would be capable of furnishing a link in the chain of evidence needed to prosecute him in the future. *Commonwealth v. Freeman*, 442 Mass. at 785.

Given what was ultimately revealed to the defendant in open court, he was not prejudiced by the occurrence of the in camera hearing. If any harm occurred, it was suffered by Gillum, who was required to divulge incriminatory information in order to allow the judge to verify the privilege claim. In the end, the

defendant has no standing to challenge the proceedings involving Gillum's assertion of the privilege. See *Commonwealth* v. *Morganti*, 455 Mass. 388, 404 (2009). To the extent the defendant could claim any residual harm in the presentation of his defense without Gillum's testimony, that harm was trumped by Gillum's Fifth Amendment rights. See *Commonwealth* v. *Drumgold*, 423 Mass. 230, 247-248 (1996) (a witness's valid assertion of the Fifth Amendment privilege against self-incrimination trumps a defendant's right to call the witness).

3. *Sufficiency of the evidence.* The defendant claims that there was insufficient evidence to support his conviction of distribution of cocaine in a school zone where the evidence did not establish that UHS was a secondary school. We disagree. "When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt' (emphasis in original). *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 152 (1999), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). See *Commonwealth* v. *Hartnett*, 72 Mass. App. Ct. 467, 475 (2008). Rather, the relevant 'question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, supra." *Commonwealth* v. *Robinson*, 74 Mass. App. Ct. 752, 757 (2009).

The defendant was convicted under G. L. c. 94C, § 32J, of distribution of cocaine within 1,000 feet of the real property of a secondary school. This statute provides for enhanced penalties for controlled substance violations near, among others, "secondary schools." However, § 32J does not provide a definition of what constitutes a "secondary school." Where a statute does not define its terms, we give them "their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). The Supreme Judicial Court has noted that the legislative intent of G. L. c. 94C, § 32J, is to make "every school and surrounding community safe from the destructive impact of drug

trafficking and drug abuse." *Commonwealth* v. *Bell*, 442 Mass. 118, 124-125 (2004). In *Bell*, the court concluded that the jury charge should employ dictionary definitions,[4] and that the jury would be warranted in finding the alternative education program at issue[5] was a secondary school within the meaning of the statute. *Id.* at 126.

In the light most favorable to the Commonwealth, the evidence was more than sufficient for the jury to have found that UHS is a secondary school within the meaning of the statute. Detective Lynch, who was familiar with the school, testified that it was a public "secondary school." See *Commonwealth* v. *Laro*, 68 Mass. App. Ct. 556, 559 (2007). Lynch also testified that high-school aged students attended classes (including history and biology) at UHS, the building held administrators and teachers, he had been inside the UHS building, he had sat in on classes while they were being taught, and he was related to a Boston public school teacher whom he had seen teaching in the building. From this evidence, we conclude that a rational jury could find that the UHS was a secondary school. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable"). From the standpoint of common sense, see *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32 (1976) ("[w]hether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense"), the evidence illustrated many of the trappings of such a school

---

[4]The court noted several definitions of "secondary school": " 'a school more advanced in grade than an elementary school and offering general, technical, vocational, or college-preparatory courses,' Webster's Third New Int'l Dictionary 2051 (1993); 'a school intermediate between elementary school and college and usu[ally] offering general, technical, vocational, or college-preparatory courses,' Webster's Ninth New Collegiate Dictionary 1060 (1989); '[a] school that is intermediate in level between elementary school and college and that usually offers general, technical, vocational, or college-preparatory curricula,' The American Heritage Dictionary 1630 (3d ed. 1996)." *Commonwealth* v. *Bell*, 442 Mass. at 124.

[5]The school in *Bell, supra* at 119-120, ABCD University High School, provides classes for approximately one hundred "at-risk" students from Boston-area high schools. ABCD University High School allows students to fulfil Boston public school graduation requirements. The students remain registered from their "home" high schools and receive their diplomas from their "home" high schools, rather than from ABCD University High School.

that justified that inference. *Commonwealth* v. *Bell*, 442 Mass. at 123-126. See *Commonwealth* v. *Laro*, *supra* at 557-558 (officer who was familiar with the school testified that it was a parochial school, attended by children carrying school books and transported to the school by school buses and parents, provided sufficient evidence that the building in question was an elementary school); *Commonwealth* v. *Williams*, 54 Mass. App. Ct. 236, 245 n.11 (2002) (that a school was an elementary school could be inferred from a police officer's testimony that it was attended by children between ages five and ten, including the officer's godchildren, and that he used to work there as crossing guard).

4. *The "buy money."* At trial, the Commonwealth offered in evidence a photocopy of the money the undercover officers used to purchase drugs from the defendant. For the first time on appeal, the defendant claims that the testimony by the officers regarding the "buy money" should have been excluded because it was prejudicial. Because the defendant lodged no objection to the now claimed error, we review only to determine whether the testimony at issue created a substantial risk of a miscarriage of justice.

Specifically, the defendant claims that he was prejudiced by Officer Beath's testimony concerning the "buy money" because the money itself was not produced at trial. There is no merit to this claim. Here, the "buy money" was photocopied before it was put back into circulation. See *Commonwealth* v. *Kee*, 449 Mass. 550, 551-558 (2007) (no error in permitting testimony regarding "buy money" where neither the actual bills, nor a photocopy of the money, were entered in evidence). In any event, as in *Kee*, the defendant failed to meet his threshold burden of showing a reasonable possibility that the actual bills used in the controlled purchase and seized from the defendant would have helped his case. *Id.* at 554-555. See *Commonwealth* v. *Dinkins*, 440 Mass. 715, 718 (2004); *Commonwealth* v. *Narea*, 454 Mass. 1003, 1004 (2009). Because there was no error, there was no risk that justice miscarried.

5. *Admission of the certificate of drug analysis.* Finally, the defendant claims that the admission of a certificate of drug analysis without the testimony of the analyst who performed the tests violated his right to confrontation protected by the Sixth

Amendment. We agree.[6] See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009). In light of *Commonwealth* v. *Vasquez*, 456 Mass. 350, 359-360 (2010), we need not determine the adequacy of the defendant's objection to the certificate, and we review to determine whether the error was harmless beyond a reasonable doubt. *Ibid.*

Here, a certificate of analysis, confirming the substance sold was cocaine, was entered into evidence through testimony from Sergeant Detective Maffeo. The analyst who performed the testing did not testify. As in *Commonwealth* v. *Vasquez*, the police officers here did not testify to any expertise or training in chemical analysis, they were not qualified as experts to proffer an opinion that the substance was in fact cocaine,[7] no field tests of the drugs were conducted, there was no testimony as to the effect the substance had on anyone ingesting it, and none of the testifying officers was involved in generating the certificate used at trial. See *id.* at 364-365. "This is not a case where the facts independent of the drug certificate[] overwhelmingly prove the nature of the substances sold to the undercover police . . . ." *Id.* at 367. "Nothing about the defendant's theory of the case relieved the Commonwealth of its burden of proving every element of the charged offenses beyond a reasonable doubt." *Commonwealth* v. *Loadholt*, 456 Mass. 411, 433 (2010). *Commonwealth* v. *Charles*, 456 Mass. 378, 381 (2010). The admission of the certificate was not harmless beyond a reasonable doubt.[8] In regard to the distribution of cocaine, and for doing so in a school zone, the judgments are reversed and the verdicts are set aside. In regard to being a habitual criminal and the conviction of second offense distribution, the judgments are reversed and the findings are set aside.

*So ordered.*

---

[6]At oral argument, the Commonwealth admirably conceded that the error required a new trial.

[7]Officer Connor merely testified that the substance was "consistent with" crack cocaine, and Officer Peter Chu testified that he "believed it to be crack cocaine." Such testimony is insufficient by itself to support a conviction.

[8]In light of this conclusion, we do not reach the jury instruction issue raised by the defendant.